**Elizabeth A. MARONEY, Plaintiff,**

v.

**Kenneth S. APFEL, Commissioner of Social Security, Defendant.**

**Mary Ann Fleming, Plaintiff,**

v.

**Kenneth S. Apfel, Commissioner of Social Security, Defendant.**

Nos. CIV.A. 97–G–2472–NE, CIV.A. 97–G–2743–NE.

United States District Court, N.D. Alabama, Northeastern Division.

April 12, 1999.

Darryl W. Hunt, Charles Tyler Clark LLC, Birmingham, AL, for Elizabeth A Maroney.

Anne Conner Wagner, Cleveland, TN, for Mary Ann Fleming.

G. Douglas Jones, Winfield J. Sinclair, U.S. Attorney's Office, Birmingham, AL, Reginald V. Speegle and Rollin D. Mathis,, Social Security Administration–Office of General Counsel, Atlanta, GA, for Kenneth S Apfel.

### *MEMORANDUM OPINION ON THE COMMISSIONER'S POST JUDGMENT MOTIONS*

GUIN, District Judge.

#### I.

The Commissioner of the Social Security Administration (the Commissioner) has filed motions to alter or amend the judgment in two cases currently pending before the court. The court requested the Commissioner to discuss the impact of the following excerpt from *Epps v. Harris*, 624 F.2d 1267 (5th Cir.1980): [1]

> Although the Appeals Council acknowledged that Epps had submitted new evidence, it did not adequately evaluate it. Rather, it perfunctorily adhered to the decision of the hearing examiner. *This failure alone makes us unable to hold that the Secretary's* [2] *findings are supported by substantial evidence* and requires us to remand this case for a determination of Epps' disability eligibility *reached on the total record.*

624 F.2d at 1273 (emphasis added). The court was concerned that prior precedent in this circuit was contrary to the holding in *Falge v. Apfel*, 150 F.3d 1320 (11th Cir.1998). It was the hope of the court that the Commissioner would distinguish the prior line of precedent, thereby leaving *Falge* as the single line of precedent on the issue of what use may be made of evidence first submitted to the Appeals Council.

In *Epps*, following an unfavorable decision by the administrative law judge (ALJ), the claimant requested review of that decision and also submitted additional evidence to the Appeals Council. 624 F.2d at 1269. The Appeals Council affirmed the ALJ's rejection of the claimant's claim. 624 F.2d at 1269. The Appeals Council did not expand or revise the ALJ's decision:

> In affirming the hearing decision, the Appeals Council merely noted that it

---

1. In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981)(en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.

2. Today the authority to grant or deny benefits is bestowed on the Commissioner of Social Security. See § 42 U.S.C. 405. However, previously such authority rested with the Secretary of the Department of Health and Human Services. Therefore, earlier cases refer to the Secretary rather than the Commissioner. No substantive distinction should be drawn based upon reference to one or the other. The court has attempted to keep its references consistent with the case being considered.

had considered the additional evidence submitted by Epps and found the ALJ's decision to be "correct." [3]

624 F.2d at 1272–73. The court of appeals considered whether the new evidence submitted by the claimant to the Appeals Council had been properly considered and stated as follows:

> Although the Appeals Council acknowledged that Epps had submitted new evidence, it did not adequately evaluate it. Rather, it perfunctorily adhered to the decision of the hearing examiner. *This failure alone makes us unable to hold that the Secretary's findings are supported by substantial evidence* and requires us to remand this case for a determination of Epps' disability reached on the total record.

624 F.2d at 1273 (citing *Mann v. Gardner*, 380 F.2d 182, 187 (5th Cir.1967)) (emphasis added). As has been noted, the above excerpt appears to be contrary to the recent holding in *Falge v. Apfel*, 150 F.3d 1320 (11th Cir.1998).

> Thus, this will be our rule: when the AC has denied review, we will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence.

150 F.3d at 1323.

 The Commissioner's response is that *Epps* should not be relied upon by the court for two reasons.[4] The first reason argued by the Commissioner is as follows:

> First, and most importantly, the Eleventh Circuit's position has evolved. It has stated that, as a general rule, the Appeals Council's denial of review is not subject to judicial review; judicial review instead is limited to determining whether the ALJ's decision is supported by substantial evidence. *Falge*, 150 F.3d at 1323.

(Commissioner's brief at 7.) This ignores the rule in the Eleventh Circuit concerning prior precedent: "The law of this circuit is 'emphatic' that only the Supreme Court or this court sitting *en banc* can judicially overrule a prior panel decision." *Cargill v. Turpin*, 120 F.3d 1366, 1386 (11th Cir. 1997). Therefore, the panel in *Falge* was not at liberty to overrule the holding of *Epps* or any other previous decision that constitutes binding precedent in this circuit. Furthermore, if conflicting lines of precedent have arisen, the Eleventh Circuit applies the "earliest case" rule. *Walker v. Mortham*, 158 F.3d 1177, 1188–89 (11th Cir.1998). That rule dictates that "when circuit authority is in conflict, a panel should look to the line of authority containing the earliest case, because a decision of a prior panel cannot be overturned by a later panel."[5] 158 F.3d at

---

**3.** The court acknowledges that it might be argued that the "affirmance" by the Appeals Council in *Epps* should be distinguished from the "denial of review" in *Maroney* and *Fleming*. The reported decision does not elaborate on the precise nature of the Appeals Council's action other than to note that it affirmed the ALJ and "found the ALJ's decision to be 'correct.'" However, as will be seen, in an even earlier case the court of appeals considered evidence first submitted to the Appeals Council when the Appeals Council had denied review. Also, even though it is not clear from the reported decision, *Epps* also apparently involved evidence first submitted to a reviewing court. *See Bowen v. Heckler*, 748 F.2d 629, 636 (11th Cir.1984) discussed *infra* at p. 1254–57.

**4.** Because of other prior binding precedent discussed below, the court does not find it

necessary to address the Commissioner's second contention, that "the Appeals Council reviewed the new evidence submitted in *Fleming* and *Maroney*, whereas the Appeals Council failed to in *Epps*." (Commissioner's brief at 7.)

**5.** The court believes that it is bound to resolve intracircuit conflicts of authority in this same manner. A district court is certainly not entitled to chose between conflicting lines of binding precedent based upon its view of which line constitutes the "better rule." Nor does the court believe it should adopt the opposite of the "earliest case" rule and resolve the conflict based upon the latest case, unless that case explicitly or implicitly resolved the conflicting lines of authority. If the latest case makes no mention of contrary prior binding precedent, it simply constitutes

1188. Therefore, the court now turns to a consideration of prior binding precedent in this circuit on the issue of whether a court may utilize evidence first submitted to the Appeals Council in its review of the ALJ's decision when the Appeals Council denies review.

In *Daniel v. Gardner,* 390 F.2d 32 (5th Cir.1968), the court was faced with a situation very similar to the instant actions. In that case, the hearing examiner found the claimant not disabled and "subsequently the Appeals Council denied appellant's request for review." 390 F.2d at 33. Therefore, it is clear that the Appeals Council did not reach a decision on the merits, but just as in both of the instant actions, merely denied the claimant's request for review. The court of appeals considered the evidence submitted to the Appeals Council subsequent to the hearing examiner's decision and concluded that the claimant had "carried the burden of establishing a medically determinable physical or mental impairment as of June 30, 1959." [6]

The court of appeals began its analysis with a careful examination of the record, noting that only two doctors treated the plaintiff during the relevant time. 390 F.2d at 33. The court noted that the evidence of Dr. Lumpkin, the plaintiff's personal physician, was conflicting:

> In his report to the hearing examiner he said "This patient was first actively treated by me for hypertension in 1961 * * * and it is my opinion she would have been unemployable since that time." Significantly, however, the Appeals Council added to the record a letter from Dr. Lumpkin reciting in detail his treatment of appellant. This letter states that he began actively treating appellant for "severe nervousness" in 1951 and in July of 1954 he requested Goodyear Tire & Rubber Company to give her a three months' leave of ab-

sence because of this condition. Dr. Lumpkin's report concludes that "She was permanently and totally disabled at that time [upon her retirement from Goodyear] and was unable to seek gainful employment after her medical retirement from Goodyear Tire & Rubber Company, Gadsden, Alabama."

It is quite apparent that Dr. Lumpkin's reference to the year 1961 in his first statement to the hearing examiner was a mistake which was corrected as being the year 1951 in his later statement to the Appeals Council.

It is manifest that the hearing examiner made his findings based upon the erroneous date in Dr. Lumpkin's first statement—disability accruing in 1961— and necessarily therefore found that she was not entitled to receive disability insurance benefits "because it is essential that a person become disabled at a time he or she meets the special earnings requirements of the Social Security Act" (in this case June 30, 1959). The Appeals Council, however, had the benefit of Dr. Lumpkin's subsequent report that appellant had been permanently and totally disabled since 1954. This and Dr. Kay's corroborating findings of appellant's disability in 1957 stood undisputed in the record before the Appeals Council. The non-medical evidence strongly supports the medical conclusions reached by these doctors. Appellant therefore carried the burden of establishing a medically determinable physical or mental impairment as of June 30, 1959.

390 F.2d at 33. The above quotation makes it clear that the court of appeals looked to evidence first submitted to the Appeals Council in determining whether the hearing examiner's decision was supported by substantial evidence. The court, however, noted that there was insufficient

---

the latest case in the particular line of precedent upon which its decision is based.

6. The key issue in that case was whether the plaintiff became disabled prior to the time she last met the earning requirements of the Social Security Act.

vocational evidence in the record to allow a determination that the plaintiff was disabled. For this reason, and because of a recent change in the law, the court of appeals instructed that the action be remanded to the Secretary for further proceedings on that issue.

■ The importance of the *Daniel* case cannot be overstated. The court of appeals did not treat the evidence presented to the Appeals Council as "new evidence" to be analyzed under the provisions of sentence six of 42 U.S.C. § 405(g), but rather evaluated the evidence and, *based upon the evidence first submitted to the Appeals Council,* overturned the decision of the hearing examiner on the issue of whether the plaintiff suffered from a medically determinable physical or mental impairment as of June 30, 1959. It cannot be doubted the court of appeals considered the additional evidence submitted to the Appeals Council in reaching its decision that substantial evidence did not support the ALJ's decision. Therefore, the decision stands directly for the proposition that courts must review the ALJ's decision for substantial evidence based upon the total record, including evidence first submitted to the Appeals Council.[7] It has been observed that for law-of-the-circuit purposes it should be the judicial decision, rather than the judicial opinion, of the prior case that should be studied. *New Port Largo, Inc. v. Monroe County,* 985 F.2d 1488, 1500 (11th Cir.1993) (Edmondson, Circuit Judge, specially concurring). As Judge Edmondson noted:

For good or for bad, opinion-writing judges—unlike legislators—can make cases decide no more than the cases present. For example, no matter how often or how plainly a judicial panel may put in its opinion that "we hold X," "X" is not law and is not binding on later panels unless "X" was squarely presented by the facts of the case and was a proposition that absolutely must have been decided to decide the concrete case then before the court.... We are bound by the decisions of earlier panels of this court: like cases should have like results. We are not necessarily bound by the words of their opinions, although we may be persuaded by them even if not bound.

985 F.2d at 1500, n. 7. A corollary of Judge Edmondson's observation is that if a holding of "X" is required in order for the court of appeals to reach its ultimate decision in a case, then "X" must be taken as the law-of-the-circuit and is binding precedent in future cases even if the court does not directly state that it is holding "X." In *Daniel,* a holding that courts may utilize evidence first submitted to the Appeals Council in their review of the ALJ's decision for substantial evidence is such a required holding, even though such holding was not expressly stated.

■ In *Bowen v. Heckler,* 748 F.2d 629 (11th Cir.1984), the ALJ denied the plaintiff's claim for benefits. The Appeals Council determined that there was no basis for review under the regulations and, therefore, denied Bowen's request for review. 748 F.2d at 631. With his request for review by the Appeals Council, Bowen submitted additional evidence consisting of three documents. 748 F.2d at 633. The Appeals Council considered all of the evidence submitted but, in denying Bowen's request for review, indicated that two of the documents were not material and the third doctor's report contained no information that had not been considered by the ALJ. 748 F.2d at 633-34. The court of appeals did not agree.

[A review of the record] suggests that the Appeals Council did not adequately evaluate the additional evidence. Rather, "it perfunctorily adhered to the decision of the [administrative law judge]." *Epps v. Harris,* 624 F.2d 1267, 1273 (5th

---

7. This, of course, assumes that the requirements of the appropriate regulation governing the introduction of additional evidence to the Appeals Council have been met and that such evidence has been included in the transcript of the record filed with the district court.

Cir.1980). We have previously been unable to hold that the secretary's findings were supported by substantial evidence under circumstances such as these. *Id.* 748 F.2d at 634 (second alteration in original). The court then discussed the importance of considering all of the plaintiff's impairments in combination and held that a "claim for social security benefits may lie even though none of the impairments, considered individually, is disabling." 748 F.2d at 635. Having found that the ALJ failed to consider the combination of plaintiff's impairments, 748 F.2d at 634, the court considered "whether reversal is appropriate where: (1) the administrative law judge has failed to apply the correct legal standards to the evidence presented to him; and (2) new evidence which the administrative law judge did not consider, was submitted to the Appeals Council." 748 F.2d at 635. The court's extended discussion of the standard to be applied in such cases follows:

> We have previously emphasized that the "[failure to apply the correct legal standards or to provide the reviewing court with the sufficient basis to determine that the correct legal principles have been followed is grounds for reversal]." *Wiggins v. Shweiker,* 679 F.2d 1387, 1389 (11th Cir.1982). Thus, reversal is warranted on this ground.

> We have also commented on the limitations on the courts where a claimant has submitted additional evidence that was not considered by the administrative law judge or the Secretary. In *Epps v. Harris,* 624 F.2d 1267 (5th Cir.1980), the claimant submitted additional evidence to the Appeals Council. Because the Appeals Council merely acknowledged the submission of new evidence, the court found that it was required to remand the case to the Secretary "for a determination of the [claimant's] disability eligibility reached on the total record." *Id.* at 1273. In *Johnson v. Harris,* 612 F.2d 993 (5th Cir.1980), the claimant submitted addi-

tional evidence on appeal. It was indicated that "this Court is limited to an examination of the evidence before the ALJ and is not allowed to consider this new evidence in deciding if the administrative decision was correct. However, the existence of new evidence can create 'good cause' for remand to the ALJ for additional findings." *Id.* at 998–99. Thus, the case was reversed and remanded.

Both *Epps* and *Johnson* followed the decision reached in *Mann v. Gardner,* 380 F.2d 182 (5th Cir.1967). In *Mann* the claimant submitted additional evidence to the Appeals Council and filed a motion to supplement the record on appeal. The court indicated that the Appeals Council had not adequately evaluated the new evidence submitted and also noted that it could not review evidence not of record before the Secretary in determining the substantial evidence criteria. Thus, the case was reversed and remanded with directions for a new decision to be reached on the total record.

However, in *Western v. Harris,* 633 F.2d 1204, 1206 (5th Cir.1981), the court stated that "judicial review of decisions of the Secretary denying benefits under the Social Security Act is both provided for and limited by § 42 U.S.C. 405(g)." That section provides in part:

> The court shall have power to enter, upon pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing.

42 U.S.C.A. § 405(g). Thus, in *Vitek v. Finch,* 438 F.2d 1157 (4th Cir.1971), the court interpreted § 405(g) and stated: "Where the Secretary's determination is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the Secretary's decision 'with or without remanding the case for a rehearing.'" *Id.* at 1158

(emphasis added). Because the *Vitek* court found that there was not substantial evidence on the record as a whole to support the Secretary's denial of benefits, it reversed the judgment of the district court and remanded the case for an entry of an order awarding disability benefits.

In this case remand to the Secretary is unnecessary. This case can be distinguished from *Johnson, Epps,* and *Mann.* As in *Johnson,* the Appeals Council did not adequately consider the additional evidence. However, this failure alone does not require us to remand where there are additional grounds upon which a reversal is warranted. Moreover, this is not a case such as *Epps* and *Mann* where additional evidence, that was not before the Secretary, has been submitted for the first time to this court. *Here, all of the essential evidence was before the Appeals Council and the Secretary when their decisions were rendered.* The evidence submitted to the Appeals Council was cumulative. The evidence submitted to the administrative law judge established without any doubt that Bowen was disabled from engaging in gainful employment. The evidence of his former supervisors was uncontradicted that while engaged in the most simple jobs Bowen was in danger of injuring himself. His disabilities, namely, poor eye-hand coordination, low back pain, leg pain, learning handicap associated with retardation, arrested hydrocephalus, and heart lesion, when considered in combination, leave no doubt as to his inability to work. This was the conclusion of the expert witnesses, none of whose testimony was contradicted.

Since on the record submitted the administrative law judge *and the Appeals Council* should have awarded Bowen disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act respectively, we remand to the district court for entry of an order directed to the Secretary of Health and Human Services that such an award be made. 748 F.2d at 635–37 (emphasis added). Because the court of appeals determined that the record before the ALJ alone established that Bowen was disabled, it might at first blush appear that its discussion of evidence first submitted to the Appeals Council is *obiter dictum.* It is the law of this circuit, however, that each alternative holding constitutes binding precedent. *Johnson v. DeSoto County Bd. of Com'rs.,* 72 F.3d 1556, 1562 (11th Cir.1996)(citing *McLellan v. Miss. Power & Light Co.,* 545 F.2d 919, 925 n. 21 (5th Cir.1977)(en banc)). In *McLellan,* the court noted: "It has long been settled that *all* alternative rationales for a given result have precedential value." 545 F.2d at 925 n. 21 (emphasis in original). The court in *Bowen* clearly found the evidence submitted only to the Appeals Council important as the court's discussion of that evidence consumes an entire page in the reported decision. In its conclusion, the court devoted a great deal of discussion to the limitations facing courts presented with new evidence. The court distinguished prior cases that had included evidence first presented after the Appeals Council decision and noted that *"all of the essential evidence was before the Appeals Council and the Secretary when their decisions were rendered."* 748 F.2d at 636 (emphasis added). It concluded that "on the record submitted the administrative law judge *and the Appeals Council* should have awarded Bowen disability insurance benefits ...." 748 F.2d at 637 (emphasis added). A fair reading of *Bowen* leaves the clear impression that the court of appeals remanded with instructions that benefits be awarded based in part upon the evidence first submitted to the Appeals Council. Therefore, this alternative rationale constitutes binding precedent under *McLellan.*

■ The holding in *Falge* is directly contrary to the holdings of *Daniel* and *Bowen.* Based upon *Walker v. Mortham,* this court feels constrained to follow the

line of binding precedent containing the earliest case.[8] Therefore, the court concludes that the law-of-the-circuit is that reviewing courts may utilize evidence first submitted to the Appeals Council in determining whether substantial evidence supports the ALJ's decision. The court reaches this conclusion with reluctance, it being far easier to follow the rule recently announced in *Falge*, which is what this court has done since that decision was handed down. However, the court does not feel it is free to ignore the earlier line of precedent. The court's decision on this matter is entirely based on the existence of prior binding precedent in this circuit.

This court is not at liberty to ignore *Falge* in favor of what it might view as a better line of reasoning. Therefore, in part one of this opinion, the court has limited its consideration only to what it considers to be binding prior precedent directly on point. As the court has noted, even the *Epps* decision might be distinguished because of the form of the Appeals Council's decision. However, the court feels it should point out other cases that, although perhaps not directly on point for one reason or another, provide support for concluding that *Daniel* and *Bowen* represented the law-of-the-circuit concerning the use to be made of evidence first submitted to the Appeals Council prior to *Falge*.

## II.

Although *Daniel* and *Bowen* are the only cases of which the court is aware that are directly on point, there are numerous other cases prior to *Falge* that suggest they were not aberrations. Several of these cases differ only in that the Appeals Council appears to have "affirmed" the ALJ rather than denying review.[9] The importance of these cases, however, is that in each case it was the ALJ's decision that was reviewed for substantial evidence, just as when the Appeals Council denies review.[10]

In *DePaepe v. Richardson* 464 F.2d 92 (5th Cir.1972), the court of appeals reversed the judgment "because the hearing examiner's decision is not supported by substantial evidence, and for other reasons set forth below." 464 F.2d at 93. In *DePaepe*, the court of appeals noted that the "Secretary's decision affirmed a decision of a hearing examiner . . . ." 464 F.2d at 93. "The decision of the examiner became the decision of the Secretary." 464 F.2d at 93. After a thorough examination of the evidence, the court of appeals concluded "that the finding of the examiner and the decision of the Secretary that appellant could drive a cab, work as a security guard, and as a janitor is not supported by substantial evidence." 464 F.2d at 100. In a footnote at the end of the above quotation, the court observed:

In fairness to the examiner, it should be pointed out that the following evidence was not before the examiner: (1) V.A. diagnosis and 70 percent disability rating of 1958; (2) V.A. diagnosis and 100 percent disability rating of 1965; (3) affidavit of appellant's foreman at U.S. Mint in Colorado; (4) statement of fellow-employee Louis H. Fuller, Sr.; (5) examination and diagnosis report of Dr. Lewis C. Overholt; (6) examination and diagnosis report of Dr. Eric Oppenheimer (1958); (7) examination and diagnosis report of Dr. Oppenheimer (1961); (8) report of examination and diagnosis of

---

8. The court is not aware of any Eleventh Circuit decision prior to *Falge* that could be said to stand for the proposition that federal courts cannot under any circumstances utilize evidence first submitted to the Appeals Council in their consideration of whether the decision of the Commissioner is supported by substantial evidence.

9. It is sometimes difficult to determine from the reported decision the precise nature of the Appeals Council's action.

10. The rationale behind *Eads v. Secretary*, 983 F.2d 815 (7th Cir.1993), the case relied upon by *Falge* for its holding, seems to be that an ALJ cannot be faulted for failing to weigh evidence not before him.

Dr. K.H. Moody; and (9) report of examination and diagnosis of Dr. John O'Connor. However, all of this evidence was before the Appeals Council, whose decision was adverse to appellant and its decision became that of the Secretary. 464 F.2d at 100, n. 2. Each of these items of evidence was set out in detail by the court of appeals in its opinion.[11] After reviewing the evidence, including evidence that was only submitted to the Appeals Council, the court of appeals concluded as follows:

> However, we have concluded that the overwhelming weight of the medical, physical, and mental evidence, the medical diagnoses, the subjective evidence of pain and disability as corroborated by the claimant's wife and fellow-employees and the work history of the claimant, show that appellant is disabled within the meaning of the Act and is entitled to the disability benefits claimed. We further conclude that the adverse decisions of the examiner and Secretary are not supported by substantial evidence.

> The judgment of the district court is, accordingly, reversed with instructions to enter judgment for the appellant and to remand the case to the Secretary of Health, Education and Welfare with directions to grant appellant the disability insurance benefits claimed.

464 F.2d at 101.

In *Lewis v. Weinberger,* 515 F.2d 584 (5th Cir.1975), the court of appeals reversed the decision of the district court, which had affirmed the decision of the Secretary. The Secretary had determined the plaintiff was entitled to a closed period of disability that ended in March 1973 "because the Administrative Law Judge found that 'by January 1973 the claimant was fit to perform some light work duty of a type consistent with his age, educational level and background ....'" 515 F.2d at 586. Although the reported decision does not reflect the precise nature of the Appeals Council's disposition of the case, the court of appeals appears to have reviewed the decision of the ALJ, rather than of the Appeals Council, suggesting that the Appeals Council either denied review or affirmed the ALJ's decision. At the outset the court noted that the plaintiff's "only contention was that the administrative determination lacked substantial support in the evidence." 515 F.2d at 585. In the district court both parties moved for summary judgment "based upon the record developed before the Administrative Law Judge *and the Appeals Council.*" 515 F.2d at 585 (emphasis added). The court of appeals, in its discussion of the evidence, noted that "[b]y August 1973 two doctors expressed the opinion ... that appellant was totally and permanently incapacitated for further employment." 515 F.2d at 586. In the footnote appended to the end of the quoted sentence, the appeals court noted: "The Administrative Law Judge did not have the benefit of these last two items of evidence, but the doctors' views were considered by the Appeals Council." 515 F.2d at 586 n. 1. The court of appeals remanded the action for "an additional administrative hearing to determine whether appellant's impairments render him incapable of performing substantial gainful employment for any period after January 1973." 515 F.2d at 588.

In *McDaniel v. Harris,* after an unfavorable ALJ decision: "The Appeals Council approved the ALJ's decision ... thus making it a final decision of the Secretary ...." 639 F.2d 1386, 1388 (5th Cir. Unit A Mar.1981). Subsequent to the ALJ's decision, but prior to the Appeals Council's decision, the plaintiff was examined by Dr. Ledbetter. A report of that examination "was received as evidence by the Appeals Council; it was considered by the Appeals Council but evaluated as containing an assessment 'generally consistent' with that of

---

11. In all, the court's recounting of this evidence consumes one and one-half pages of

the reported decision.

the ALJ." 639 F.2d at 1390 n. 6. The court of appeals, however, noted that "[i]t is difficult to so evaluate [the report]" and proceeded to quote extensively from the physician's report. 639 F.2d at 1390 n. 6. The court of appeals found that earlier reports were "improperly relied upon by the Secretary in the face of Dr. Ledbetter's more recent opinion based upon actual observation of the claimant's condition more than a year after the injury." 639 F.2d at 1390. The conclusion of the court of appeals is as follows:

> Based on the absence of any evidence that McDaniel is not physically disabled—or that there is substantial gainful work existing in the national economy—, *we find that the Secretary's decision is not supported by substantial evidence.* We remand the case to the district court so that it may issue an appropriate order directing the Secretary to grant the appellant the disability benefits to which he is entitled in accordance with this opinion.

639 F.2d at 1391.

In *Smith v. Schweiker,* 646 F.2d 1075 (5th Cir.1981), the plaintiff's benefits were terminated following a hearing before an ALJ. New evidence was submitted to the Appeals Council:

> The decision of the Administrative Law Judge (ALJ) which terminated Smith's "disability" status became the final decision of the Secretary following what was referred to as a "de novo" consideration of additional evidence by the Appeals Council in December of 1978.

646 F.2d at 1076. The court of appeals, after noting that the ALJ's finding was repeated by the Appeals Council, the Secretary, and finally by the district court, stated as follows:

> "We decline to follow the leader. Instead, based on our impartial consideration of the total record, we find the adverse decision to Smith by these bod-

ies to be unsupported by substantial evidence for at least three reasons."

646 F.2d at 1080. As part of its second reason, the court noted that it must look to the record as a whole, including the additional evidence submitted to the Appeals Council in order to determine whether substantial evidence supported the Secretary's decision:

> Because the standard of substantial evidence requires that it be founded on the record as a whole, it is also necessary to consider the evidence supporting Smith's position. In adopting and affirming the findings of the ALJ, the Appeals Council failed to consider [12] new evidence supportive of Smith's position—particularly that evidence dated after 1977.

646 F.2d at 1082. The court noted that it was significant that evidence was submitted which also related to the period after the Appeals Council hearing.

> Significantly, when Dr. Van Zandt's reports of March 24, 1978 and April 19, 1978 are read together, they establish without contradiction that Smith had no real improvement as far as strength and function in his lower back from June 30, 1976, to March 10, 1978 *after* the Appeals Council hearing which affirmed the ALJ's termination of Smith's benefits. The situation becomes, therefore, similar to that in *Epps v. Harris* ....

646 F.2d at 1082. The court then quoted extensively from *Epps,* including the portion of that opinion noting that the Appeals Council "did not adequately evaluate" the additional evidence. The court, in emphasizing that the evidence showed that the plaintiff had not improved even after the Appeals Council decision, apparently was emphasizing that at no time prior to the Appeals Council decision did substantial evidence support the Secretary's decision to terminate benefits.

**12.** It is suggested that, when considered in connection with other statements by the court, the court is using the word "consider" to mean "adequately evaluate," a phrase used by the court in *Epps.*

The court concluded that "[t]he *findings of the ALJ* do not meet our understanding of substantial evidence *on the record as a whole.*" 646 F.2d at 1083 (emphasis added). Unlike in *McDaniel*, the court of appeals instructed that the action be remanded to the Secretary "for a full evaluation in the light of controlling principles of all the evidence including the new evidence submitted by Smith after 1977 and any further new evidence submitted by either or both parties and received by the ALJ." 646 F.2d at 1083.

In *Smith v. Bowen*, 792 F.2d 1547 (11th Cir.1986), the plaintiff was denied benefits by an ALJ. The Appeals Council "denied Smith's request for review of the ALJ decision." 792 F.2d at 1550. The plaintiff submitted additional evidence to the Appeals Council, which the court of appeals noted was in accordance with 20 C.F.R. § 416.1470(b), which governs the submission of additional evidence to the Appeals Council in SSI cases. The court noted that it had "remanded cases in which the Appeals Council failed to adequately evaluate new evidence submitted to it and instead perfunctorily adhered to the decision of the ALJ." 792 F.2d at 1551 (citing *Epps v. Harris, supra.*). The language used by the Appeals Council in *Smith* closely parallels that used in the instant cases: "the Appeals Council simply stated that it had considered the letter brief and the new evidence, but 'decided that neither the contentions nor the additional evidence provided a basis for changing the Administrative Law Judge's decision.'" 792 F.2d at 1551. The court continued:

> We do not decide whether the record required that the ALJ order a consultative psychiatric examination. *It seems apparent, however, that the evidence as it stood before the Appeals Council indi-cated the relevance and usefulness of such an examination.* We emphasize the merit of Smith's argument *and the error in the Appeal's Council's treatment of her request* because of the Secretary's reversal of his position on this issue. In his motion for a remand, the Secretary now acknowledges that development of the medical evidence on Smith's mental impairment is necessary, a position contrary to that taken by him throughout the history of this case.

792 F.2d at 1551 (emphasis added). The plaintiff submitted additional evidence to the district court, which the court determined met the standard under *Cherry v. Heckler*, 760 F.2d 1186 (11th Cir.1985), which governs new evidence not made part of the administrative record below. In conclusion, the court of appeals remanded the action for "consideration of the totality of Smith's claims, for consideration of her new evidence, and for assessment of her alleged pain and mental impairments." 792 F.2d at 1554. Just like in *Bowen*, the Appeals Council denied review. The court of appeals' decision again suggests that the evidence submitted to the Appeals Council could appropriately be utilized by reviewing courts in determining whether the Commissioner's decision was supported by substantial evidence. However, because it appears that the court of appeals based its decision to remand the case in part upon sentence six of 42 U.S.C. § 405(g), it cannot be said unequivocally that the court decided the case based upon evidence first submitted to the Appeals Council.

All of the above cases [13] suggest that it has long been the law of this circuit that courts may consider evidence first submitted to the Appeals Council in determining whether substantial evidence supports the Commissioner's decision. None of these

---

**13.** In one other case of which the court is aware, *Wilson v. Heckler*, 734 F.2d 513 (11th Cir.1984), the court of appeals apparently considered evidence from the plaintiff's doctor that was first submitted to the Appeals Council. 734 F.2d at 518. The court of appeals, however, concluded the evidence did not contradict the ALJ's finding that the plaintiff could perform a wide range of sedentary work. 734 F.2d 519. Nonetheless, the court considered the additional evidence in its determination of whether substantial evidence supported the ALJ's decision.

cases was cited by the *Falge* court. Therefore, it does not appear that the court in *Falge* considered them or found them to be distinguishable.[14]

## III.

One other case deserves special treatment because it was discussed by *Falge*. In *Keeton v. Department of Health and Human Services*, 21 F.3d 1064 (11th Cir. 1994), the plaintiff was denied benefits after a hearing before an ALJ. Keeton requested review by the Appeals Council and submitted additional medical evidence to that body consisting of testimony from Dr. Bush, his treating physician. 21 F.3d at 1065. The Appeals Council denied Keeton's request for review. 21 F.3d at 1065. The district court affirmed the Secretary's decision and "ruled that the district court would not consider the new evidence from Keeton's treating physician in reaching its determination of whether substantial evidence exists to support the Secretary's decision." 21 F.3d at 1065–66. In the court of appeals, Keeton raised four contentions:

> [1][That] the district court erred in affirming the Secretary's decision without considering the new evidence from his treating physician; [2] that substantial evidence [did] not support the decision of the Secretary because the Appeals Council failed to give the proper weight to the testimony of Dr. Bush, Keeton's treating physician; [3] that the ALJ did not properly consider his subjective allegations of pain under the standard mandated in the Eleventh Circuit; and [4] that the ALJ failed to consider the combination of Keeton's two impairments.

21 F.3d at 1066. Under the heading "ISSUE," is found the following statement by the court of appeals:

> The issue we address is whether the district court properly refused to consider evidence that was not before the administrative law judge in reaching its determination of *whether substantial evidence exists to support the Secretary's decision.*

21 F.3d at 1066 (emphasis added). Turning to the merits of the appeal, the court of appeals again restated the issue that it was required to resolve:

> When the Appeals Council denies review, the decision of the ALJ becomes the final decision of the Secretary. In this situation, the question raised is what constitutes the record when the Appeals Council denies review. The Secretary urges this court to adopt the rule that where the decision of the ALJ becomes the final decision of the Secretary, the record only consists of the evidence presented to the ALJ. Keeton urges us to adopt the rule that the record includes additional evidence submitted to the Appeals Council.

21 F.3d at 1066. The court noted that there was a split among the circuits "on what evidence constitutes the 'record' the district court is to review." 21 F.3d at 1067. The court's quoted from *Nelson v. Sullivan*, an Eighth Circuit decision:

> In *Nelson*, the Fourth [sic] Circuit held that where "the Appeals Council considers the new evidence but declines to review the case, we review the ALJ's decision to determine *whether there is substantial evidence in the administrative record, which now includes the new evidence, to support the ALJ's decision.*"

---

14. It would not be within this court's purview to disagree with the *Falge* court if it had in fact distinguished these cases, or found them not to present a contrary line of precedent. Also, it would be contrary to the rationale of *Walker v. Mortham* to presume that *Falge* implicitly contained such a ruling. Certainly a subsequent panel of the court of appeals would not be free to do so, and this court concludes that neither should district courts. This approach will ensure that intracircuit splits are brought to a "screeching halt" sooner rather than later. *See, Walker,* 158 F.3d at 1189, n. 25 ("The 'earliest case' rule also has the virtue (*if consistently applied*) of bringing intracircuit splits to a screeching halt ....)" (emphasis added).

21 F.3d at 1067 (citation omitted)(italics in original)(emphasis supplied by underlining added). The court then considered the approach of the Seventh Circuit as expressed in *Eads v. Secretary*, 983 F.2d 815 (7th Cir.1993). It quoted from *Eads* as follows:

> Since the submission of the evidence precedes the Appeals Council's decision, and that decision, even when it denies review is a precondition to judicial review, the new evidence is a part of the administrative record that goes to the district court in the judicial review proceeding, and then to this court if there is an appeal. *It might seem therefore that the district judge and we would be free to consider the new evidence in deciding whether the decision denying benefits was supported by the record as a whole.* And of course this is right when the Council has accepted the case for review and made a decision on the merits, based on all the evidence before it, which then becomes the decision reviewed in the courts. *It is wrong when the Council has refused to review the case. For then the decision reviewed in the courts is the decision of the administrative law judge. The correctness of that decision depends on the evidence that was before him.*

21 F.3d at 1067 (citation omitted)(italics in original)(emphasis supplied by underlining added). Therefore, the court in *Keeton* quoted from two cases, both of which found the additional evidence submitted to the Appeals Council constituted part of the administrative record. The two cases, however, differed in the *use* the district court was permitted to make of the additional evidence. Although *Eads* in fact held that the administrative record includes the additional evidence, the *Keeton* court utilized a quotation from that case to illustrate the rationale used by courts that hold the administrative record does not contain the additional evidence.

> Courts holding that new evidence does not become part of the administrative record when the Appeals Council denies review do so on the ground that the district court is reviewing the decision of the ALJ and "the correctness of that decision depends on the evidence that was before him."

21 F.3d at 1067 (quoting *Eads*, 983 F.2d at 817). This clearly suggests that the court believed inclusion of the evidence in the record would naturally allow such evidence to be used to determine if the ALJ's decision was supported by substantial evidence. The conclusion that the court was choosing between *Nelson* and *Eads* appears inescapable. After this review of the different approaches regarding additional evidence, the *Keeton* court announced its holding:

> [W]e hold that the new evidence first submitted to the Appeals Council is part of the administrative record *that goes to the district court for review* when the Appeals Council accepts the case for review as well as when the Council denies review.

*Id.* (emphasis added). The court next considered the additional evidence submitted to the Appeals Council and found that the Appeals Council's decision that the evidence was cumulative could not be supported because the previous evidence from the plaintiff's physician consisted of notes, which the ALJ had stated were "largely illegible." 21 F.3d at 1068. Because "the district court erroneously believed that it could only consider evidence presented to the ALJ," the court remanded the case to the district court "to review Dr. Bush's statement and to apply the three prong standard for remand to the Secretary." 21 F.3d at 1068.

The court noted that Keeton had raised "several other grounds for reversal of the ALJ's finding that he is not disabled including: (1) the Appeals Council failed to give the proper weight to the opinion of his treating physician, Dr. Bush; (2) the ALJ failed to apply the correct pain standard; and (3) the ALJ failed to consider the combined effect of his impairments." 21

F.3d at 1068. The court, however, determined that it was unnecessary to address these arguments "[b]ecause this case must be remanded to the district court for *its* consideration of the new evidence consisting of Dr. Bush's sworn testimony." 21 F.3d at 1068 (emphasis added). If the enumerated list of issues the court of appeals would not address is compared with the list of contentions raised by Keeton, it becomes apparent that the omitted contention—"[that] the district court erred in affirming the Secretary's decision without considering the new evidence from his treating physician"—was the one resolved by the court of appeals. Finally, the court restated its holding as follows:

> We hold that the district court erred when it refused to consider new evidence that was not before the administrative law judge *in reviewing the Secretary's decision.* Accordingly, we remand the case to the district court *to consider the new evidence presented to the Appeals Council and all other issues.*

21 F.3d at 1068 (emphasis added).

From the above discussion it is difficult to conclude that *Keeton* represents anything other than a decision by the court of appeals to adopt the rationale of those circuits that hold the district court may review the additional evidence submitted to the Appeals Council in its determination of whether substantial evidence supports the ALJ's decision. However, because the court in *Falge* noted the *Keeton* decision and stated that the issue of what consideration should be afforded the evidence submitted for the first time to the Appeals Council had not yet been decided, this

court must conclude that *Keeton* does not stand for that proposition.[15] The court, however, notes that prior to *Falge*, at least two other courts of appeals concluded that *Keeton* had held that courts may utilize such evidence for the purposes of judicial review. *See, O'Dell v. Shalala,* 44 F.3d 855, 858–59 (10th Cir.1994)(citing *Keeton* )("We join the Fourth, Eighth, Ninth, and Eleventh Circuits, in holding that the new evidence becomes part of the administrative record to be considered when evaluating the Secretary's decision for substantial evidence."); *Perez v. Chater,* 77 F.3d 41, 45 (2nd Cir.1996)(holding that evidence first submitted toe the Appeals Council may be used by courts to review the ALJ's decision for substantial evidence and citing *Keeton* in noting that the Eleventh Circuit is one of five circuits that "have concluded that the new evidence submitted to the Appeals Council becomes part of the administrative record for purposes of judicial review when the Council denies review").

## IV.

The court's attention was initially drawn to the *Epps* decision because of the assertion implicit in the Commissioner's submissions that the Appeals Council has total discretion whether to review cases or not. This seems to be somewhat harsh, in that the Commissioner's regulations specifically authorize claimants to submit additional evidence to the Appeals Council without requiring a showing of good cause for failure to present the evidence earlier.[16] Additionally, the regulation providing for the submission of additional evidence suggests that the Appeals Council "will" review the

**15.** This court is, of course, not free to hold that *Falge* 's interpretation of *Keeton* is wrong.

**16.** It had been noted in this circuit prior to *Falge* that the regulation sets up a different standard than sentence six of Section 405(g). In *Milano v. Bowen,* the court determined the Appeals Council was not required to consider the proffered evidence under 20 C.F.R. § 404.970(b). 809 F.2d 763, 766 (11th Cir. 1987). (The version of that regulation in ef-

fect at that time required that new evidence be "submitted with the request for review." This is no longer a requirement. The prior version also did not specify that the evidence must relate to the period on or before the date of the ALJ hearing decision.) It then, however, determined the claimant had "satisfied the more stringent standard of [sentence six of] § 405(g)." 809 F.2d at 766.

claimant's case if certain conditions are met. The pertinent regulation is 20 C.F.R. § 404.970(b), which provides as follows:

> If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council *shall* evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It *will* then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

(emphasis added).[17] The Commissioner's regulations also provide that the claimant may introduce information at each stage of the administrative review process:

> In making a determination or decision in your case, we conduct the administrative review process in an informal, nonadversary manner. In each step of the review process, you may present any information you feel is helpful to your case. Subject to the limitations on Appeals Council consideration of additional evidence (see §§ 404.970(b) and 404.976(b)), we will consider at each step of the review process any information you present as well as all the information in our records.

> \* \* \* \* \* \*

20 C.F.R. § 404.900(b). Therefore, it seems harsh to suggest that the decision of the Appeals Council not to review a case in which additional evidence is submitted is not reviewable by the district court. This is especially so in light of the long delays

sometimes attendant with Appeals Council decisions.[18]

In *Perez v. Chater,* 77 F.3d 41 (2nd Cir.1996), the court considered the interrelation of 20 C.F.R. § 404.970(b) and the issue of what use a reviewing court should make of such evidence.

In *O'Dell,* the Tenth Circuit held that new evidence submitted to the Appeals Council "becomes part of the administrative record to be considered when evaluating the Secretary's decision for substantial evidence." 44 F.3d at 859. The *O'Dell* court reviewed the other circuits' reasoning in reaching their decisions and explained that its holding was based on three considerations. *Id.* at 858–59. The court noted that § 20 C.F.R. 404.970(b) expressly authorizes claimants to submit new evidence to the Appeals Council, and that ignoring this evidence on review might undermine the purpose of the regulation. Second, the court observed that the regulations seem to make the new evidence part of the administrative record by requiring the Appeals Council to evaluate the new evidence. Finally, the court stated that, *"because the Secretary's decision does not become final until after the Appeals Council denies review or issues its own findings, her 'final decision' necessarily includes the Appeals Council's conclusion that the ALJ's findings remained correct despite the new evidence." Id.* at 859. We consider this reasoning persuasive.

Like the Tenth Circuit, we hold that the new evidence submitted to the Appeals Council following the ALJ's decision becomes part of the administrative record for judicial review when the Appeals Council denies review of the ALJ's

---

17. It should be noted that in the initially proposed version of this regulation, the Appeals Council would not have been free to consider any additional evidence submitted after the date of the ALJ hearing decision. *See,* 52 FR 4001.

18. In both *Fleming* and *Maroney* almost 14 months elapsed from the ALJ's decision until the Appeals Council's denial of review. The court takes judicial notice of the fact that in many cases the delay is even longer, more than 20 months in many cases appealed to this court in the last year.

decision. In promulgating § 404.970(b) and § 416.1470(b), the Secretary expressly authorized claimants to submit new evidence to the Appeals Council without a "good cause" requirement. *Cf.* § 42 U.S.C. 405(g) (stating that the district court may order additional evidence to be taken before the Secretary, but only upon a showing "that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding"). The only limitations stated in these rules are that the evidence must be new and material and that it must relate to the period on or before the ALJ's decision. This regulation was promulgated by the Secretary to provide claimants a final opportunity to submit additional evidence before the Secretary's decision becomes final. *Accordingly, ignoring this new evidence on judicial review would undermine the purpose of the regulation.*

In addition, the regulations appear to treat the new evidence as part of the administrative record. The regulations require the Appeals Council to "evaluate the entire record including the new and material evidence submitted ... [and] review the case if it finds that the [ALJ's] action, findings, or conclusion is contrary to the weight of the evidence currently of record." § 404.970(b); *see also* § 416.1470(b). Therefore, even when the Appeals Council declines to review a decision of the ALJ, it reaches its decision only after examining the entire record, including the new evidence submitted after the ALJ's decision. Because the regulations require the Appeals Council to review the new evidence, this new evidence must be treated as part of the administrative record. Furthermore, the administrative process continues when a claimant requests the Appeals Council to review a decision of an ALJ. The regulations provide that the Secretary's decision does not become final until after the Appeals Council either rules on a case that it has accepted for review or denies re-

view. *See* §§ 20 C.F.R. 404.955, 416.1481. *Therefore, when the Appeals Council denies review after considering new evidence, the Secretary's final decision "necessarily includes the Appeals Council's conclusion that the ALJ's findings remained correct despite the new evidence." O'Dell,* 44 F.3d at 859. Accordingly, the administrative record should contain all evidence submitted before this final decision, including the new evidence that was not before the ALJ.

In *Eads,* the Seventh Circuit was concerned that, if new evidence submitted to the Appeals Council was considered part of the administrative record for review, the court's role would be transformed "from that of a reviewing court to that of an administrative law judge." 983 F.2d at 817. It seems to us that this concern is unfounded. Our holding that evidence first submitted to the Appeals Council becomes part of the administrative record does not require the district court or this court to perform any functions performed by an ALJ. When the Appeals Council denies review after considering new evidence, *we simply review the entire administrative record, which includes the new evidence, and determine, as in every case, whether there is substantial evidence to support the decision of the Secretary.*

77 F.3d at 45–46 (emphasis added).

**CONCLUSION**

The court concludes that it must follow the line of precedent in this circuit that includes *Daniel v. Gardner* because of the "earliest case" rule, which this circuit uses to determine which of two contradictory intracircuit lines of precedent to follow. Respectfully and reluctantly, therefore, the court concludes that it must not follow the rule announced in *Falge* in the above styled actions. The court noted in its original memorandum opinion in *Maroney* that the evidence submitted for the first time to the Appeals Council, consisting of the tes-

timony of Dr. Janssen, was sufficient to support a finding of disabled. (*Memorandum Opinion* at 1254.) In *Fleming,* the court noted that the evidence first submitted to the Appeals Council, consisting of medical records from Dr. Shergy documenting the presence of fibromyalgia and arthritis, supported the plaintiff's testimony of disabling pain. In both cases the court would have reversed the decision of the Commissioner and remanded with instructions that the plaintiffs be awarded the benefits claimed had it not relied upon the rule announced in *Falge.* Therefore, the court will vacate the judgments in both actions because each was based upon the court's mistaken belief that *Falge* represented the proper line of precedent to be followed. New judgments and amended memorandum opinions will be entered and the Commissioner's Rule 59(e) motions will be denied.

The court is of the opinion that a definitive answer by the circuit is needed as to which of the two contradictory lines of authority should be followed in the future by the district courts. The court takes judicial notice that the delay between the decision of the ALJ and issuance of an Appeals Council decision is increasing. This delay, together with the Commissioner's regulations that invite claimants to submit additional evidence to the Appeals Council, means that a large number of Social Security Appeals come to the district courts with evidence in the record

that was first submitted to the Appeals Council. Under *Daniel* and *Bowen,* the district courts will be able to expeditiously deal with this evidence. Such evidence does not generally differ in nature from the evidence presented to the ALJ. Typically it will consist of medical reports that differ in no respect from the kind of medical reports submitted to the ALJ. As the Second Circuit noted in *Perez,* consideration of such evidence to determine if the ALJ's decision continues to be supported by substantial evidence does not require the court to usurp the province of the ALJ. Under *Falge,* even if the evidence presented to the Appeals Council demonstrates beyond doubt the claimant's entitlement to an award of benefits, the court will be limited to a remand, which will, for a deserving claimant, only further delay justice.[19] On remand for consideration of the evidence, it is not unlikely that an additional two years or more would pass before the case was again ready for decision by the district judge.[20] Justice delayed will often amount to justice denied.[21] The court points out these delays to illustrate the importance of this matter to the claimants involved. Again, the court does not follow *Daniel* and *Bowen* because they represent the "better rule," but only because they are binding precedent under the "earliest case" rule.

Should the Commissioner appeal these actions, the court hopes that this issue will be resolved, either by an *en banc* consider-

**19.** For a discussion of the current delay claimants face, see Peggy Sanford, *People Die Waiting for Disability Benefits,* Birmingham News, September 21, 1998, at 1A, attached hereto as "Exhibit A." The undersigned recently discovered that a case remanded by him in 1992 was not heard anew by an ALJ until 1997. This was disclosed in a fee application by the successful attorney in 1998.

**20.** In Social Security Appeals, the Commissioner is allowed 90 days to respond to the complaint by filing an answer together with a transcript of the record. The standard briefing schedule in this court consumes three months even if no extensions are granted. Therefore, there is a six month delay between

the filing of the complaint and the time the matter is ripe for decision by the district court.

**21.** It should be borne in mind that if substantial evidence supports the ALJ's decision even when the additional evidence is considered, the court would affirm the Commissioner's decision. Should the additional evidence demonstrate that substantial evidence does not support the ALJ's decision, remand pursuant to sentence four of 405(g) might still be the appropriate course. Only when the additional evidence clearly establishes substantial evidence could not support a finding that the plaintiff is not disabled, would the court reverse and award benefits.

ation of the matter, or by a panel decision determining which of the two contradictory lines of precedent should be followed. This court will in the future attempt to avoid being required to decide between *Falge* and the earlier line of binding precedent that includes *Daniel* and *Bowen* if the record so permits, as such a decision presents a most unpleasant dilemma for a district judge.

EXHIBIT A

# People die waiting for disability benefits

**By PEGGY SANFORD**
News staff writer

Douglas Friedman doesn't flinch when he talks about the frequency of his clients dying before their cases are settled.

The Birmingham lawyer for 20 years has represented people seeking Social Security disability benefits.

"Our clients routinely die before their cases are settled, because it takes so long," he said. "I guess I've gotten used to it."

One client committed suicide because she was so distraught by her pain and repeated denials for benefits, he said.

Some cases take more than four years to get a final determination, Friedman said.

The numbers show that the farther in the appeals process someone goes, the greater the chances of getting benefits, he said. Many people quit too early because they get disgusted with the delays in the overburdened system, he said.

About a fourth of the people in Alabama who get disability benefits have to go beyond Social Security workers in administrative appeals to get them.

Susan Daniels, deputy commissioner with the Social Security Office of Disability and Income Security Programs in Baltimore, agrees that if benefits aren't granted by Social Security case workers and the decision is appealed, "it takes a long time."

See **Disability benefits**, Page 2A

## Disability benefits

From Page 1A

"We're not satisfied with it," she said. "We're trying to improve it."

"But nobody's ever going to hear from the 900,000 people a year who get their benefits within 90 days," Ms. Daniels said. More than 68 percent of disability customers nationwide fall in that group, she said.

"Every individual who disagrees with the SSA (Social Security Administration) decision has the right to have someone review that decision without prejudice to either side," Ms. Daniels said.

From Oct. 1, 1997, through August this year, 11,061 disability claims were filed in Alabama with Social Security, said John Trollinger, deputy press officer at Social Security headquarters in Baltimore.

Of the total, 3,324 were granted upon the initial application, while 7,216 were denied, Trollinger said. Of those denied, 4,993 asked Social Security workers to reconsider their cases, he said.

On reconsideration, 514 decisions were reversed and benefits granted, while 4,280 claims again were denied, Trollinger said.

The numbers don't add up to the 11,061 initial claims because some applicants die or return to work before the process runs, he said.

The next level of appeal is to an administrative law judge in the Social Security's Office of Hearings and Appeals.

In Alabama about half of the cases denied on reconsideration at Social Security are appealed to an administrative judge, he said. About 58 percent of the cases heard on appeal are reversed, he said.

That would equal 1,241 cases overturned by an administrative law judge in Alabama from October through August.

In Birmingham, it takes four to eight months to get through the initial application and reconsideration levels at Social Security, Friedman

said. If an applicant then requests a hearing, it will take another year to actually get one, he said.

Trollinger said 3,781 cases are pending in the hearing office in Birmingham. The average processing time in that office, from request for a hearing until the judge signs the decision, is 453 days.

The Alabama wait is longest in Montgomery — an average 496 days and 3,445 cases pending.

Mobile has the most cases pending, at 4,302, but the average wait there is 363 days. A case will be heard quickest in Florence where the pending caseload is 1,950 and the average wait 277 days.

A hearing before an administrative law judge is the first time an applicant is seen face-to-face by the person who will rule on the case.

"If you're denied at the hearing, you're really in a mess," Friedman said. The next level is to apply to the Appeals Council in Baltimore. That council is so backlogged with cases that it will take about 15 more months for the case to be reviewed there, he said.

### Year's delay possible

The Appeals Council can reverse the denial and send it back to the Office of Hearings and Appeals. That could mean another year before the case is heard again, Friedman said. The worst case Friedman's office has handled involved the middle-aged woman who committed suicide in 1995.

She had had three back surgeries when an administrative law judge in Florida refused to overturn the decision to deny benefits, Friedman said. The Appeals Council overruled the judge's decision and sent the case back to him for rehearing. Again, he denied the claim.

"She was so distraught, she killed herself," Friedman said.

The suicide was an extreme, he said, but people dying and losing

their homes while the appeals drag on is far too common.

"There's a very fine line between you and I and the people who are living on the street," Friedman said.

Insurance is employer-based in this country; so if an employee is injured or becomes seriously ill, they likely will have coverage.

"But eventually you lose your job," he said. "You lose your job, then your house, your spouse and your family, in that order, and then you end up on the street."

Friedman is quick to say that Social Security workers and the administrative judges do the best they can with the resources they've got against the flood of claims.

Ms. Daniels said SSA had a big influx of cases in 1994 and 1995 that swelled the initial claims to 3.5 mil-

lion nationally. That was up from about 2 million in the previous few years, she said.

Slowly the numbers have come back down, to about 2.1 million last year, she said. Social Security has increased the number of administrative law judges from about 800 in 1994 to 1,200 now, Ms. Daniels said.

A drastic improvement in the economy and changes in the laws that made alcoholics and drug addicts ineligible for disability benefits and some children ineligible for Supplemental Security Income also have reduced claims, she said.

Social Security's disability programs are in addition to its well-known role as a retirement fund. The agency operates the Disability Insurance plan for those who have paid into Social Security through their paychecks, and the Supplemental Security Income program for those who are disabled but have not paid into the system, such as children and legal immigrants.

Ms. Daniels said the agency is "making rapid improvements" in its processing time while paying more than $65 billion in disability benefits to more than 8 million people.

There are about 14,000 workers nationwide reviewing about 1.2 million applications a year, plus reviewing older cases for continuing eligibility and, in some states, doing Medicaid reviews, she said.

"Our workers are doing a great job moving cases through," Ms. Daniels said. Ms. Daniels doesn't deny that people often die while awaiting benefits.