James W. WELCH, Plaintiff-Appellant,

v.

Otis R. BOWEN, Secretary of Health and Human Services, Defendant-Appellee.

No. 87-8805.

United States Court of Appeals, Eleventh Circuit.

Sept. 6, 1988.

T. Edward Tante, IV, Powell O'Dell Tante & Meacham, Columbus, Ga., for plaintiff-appellant.

Jack Hood, Asst. U.S. Atty., Macon, Ga., for defendant-appellee.

Before TJOFLAT and EDMONDSON, Circuit Judges, and WISDOM *, Senior Circuit Judge.

PER CURIAM:

In the light of *Cowart v. Schweiker*, 662 F.2d 731, 735–36 (11th Cir.1981), this case concerns the "basic obligation" of an Administrative Law Judge (ALJ) to "develop a full and fair record" regarding vocational opportunities available to a social security claimant. Appellant James W. Welch ap-plied for disability insurance benefits and received a hearing on his claim before an ALJ. The ALJ found that "[t]he claimant is unable to perform his past relevant work" and that "[t]he claimant has the residual functional capacity to perform the physical exertion and nonexertional requirements of work except for heavy work or medium work requiring climbing, balancing, working at heights or around dangerous machinery." Relying exclusively upon regulations promulgated by the Secretary of Health and Human Services,[1] the ALJ concluded that Welch was not "disabled" because "there are a significant number of jobs in the national economy which he could perform." Because the ALJ failed to develop an adequate record on this issue, a new hearing is required.

## BACKGROUND

Welch filed an application for disability insurance benefits with the Department of Health and Human Services (HHS). He claimed that he suffered from "heart disease, double hernia, [and] vertigo-inner ear." After HHS denied his application, Welch filed a request for a hearing before an ALJ.

At the hearing, Welch testified that he was 53 years old and had completed one year of college.[2] He stated that he last worked as a courier in June 1983; after a heart attack, he was unable to return to his job.[3] Welch explained that he suffered from vertigo and that he could no longer drive because of severe dizzy spells. He also complained of a heart condition, double hernia, chest pain, and breathing and circulation problems. In addition to Welch's testimony, various documents and medical evidence were submitted at the hearing.

Later, the ALJ rendered his decision, stating that Welch "has a severe impair-

* Honorable John Minor Wisdom, Senior U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

1. See 20 C.F.R. sec. 404.1569 (1987).

2. Welch signed a statement and agreed to proceed without legal representation.

3. From 1968 to 1970, Welch worked as a "driver on route serving machines". From 1970 to June 1983, Welch worked as a courier, "driving, carrying business documents, auto parts, blood, radio-active blood and you know, different things like that. Anything from one pound to a hundred pounds." After his absence from work due to heart problems, Welch attempted to return to his job as a courier, but "I couldn't pass the physical to go back to work after I was out."

ment, i.e., an impairment which significantly limits his ability to perform basic work activities. Although the medical evidence does not document an impairment that meets or equals a listed impairment in Appendix 1,[4] it clearly documents that the claimant's difficulties prevent him from returning to his prior relevant work." The ALJ specifically found that Welch suffers from exertional and non-exertional limitations or impairments.[5] Nonetheless, the ALJ relied upon HHS regulations—Rule 203.22 of 20 C.F.R. pt. 404, subpt. P, app. II sec. 203.00, Table No. 3, and 20 C.F.R. sec. 404.1569 (the "grids")—to determine that Welch can "perform ... medium work",[6] "except for ... medium work requiring climbing, balancing, working at heights or around dangerous machinery." Using the "grids" as "a framework for decisionmaking", the ALJ determined that "there are a significant number of jobs in the national economy which [Welch] could perform." Thus, the ALJ concluded that "[t]he claimant was not under a 'disability,' as defined in the Social Security Act...."

In the district court, Welch filed a challenge to the denial of his disability insurance claim. Among other things, Welch contended that the ALJ erred when he relied exclusively upon the "grids" to determine the availability of "jobs in the national economy which [Welch] could supposedly perform." Welch stressed that the ALJ "failed to cite any specific jobs which [Welch] could perform. The ALJ did not even point to specific jobs in the final decision." Furthermore, Welch stated that "the record is devoid of expert vocational testimony. Only when the medical evidence has clearly established the claimant's ability to do *unlimited* types of a certain category of work is expert testimony unnecessary." The district court affirmed the denial of benefits.[7]

## "FINDINGS" ON JOB AVAILABILITY

█ Welch contends that the ALJ failed to develop or to articulate any *specific basis* for his conclusion that "there are a significant number of jobs in the national economy which [Welch] can perform." This challenge implicates the important principle that "the ALJ has a basic obligation to develop a full and fair record." *Cowart*, 662 F.2d at 735. While our review of factual findings is necessarily limited by the "substantial evidence" standard, "[n]o similar presumption of validity attaches to the Secretary's legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir.1987).

The ALJ found that Welch "is unable to perform his past relevant work as [a courier]." As we recently explained,

> once the claimant has established that she cannot return to her past relevant work, the burden shifts to the Secretary to prove that the claimant is capable, considering her age, education, and work experience, of engaging in any other kind of gainful employment.... At this stage, the Medical Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P, app. II (the grids), may come into play. These guidelines include detailed grids and rules which, based on a claimant's residual functional capacity, age, education, and previous work experience, direct a finding of disabled or not disabled.

*Walker*, 826 F.2d at 1002. In this case, the ALJ received no testimony from a vocation-

---

**4.** See 20 C.F.R. sec. 404.1520(d) ("If you have an impairment(s) which meets the duration requirement and is listed in Appendix 1 or is equal to a listed impairment(s), we will find you disabled without considering your age, education, and work experience.").

**5.** For general background, see *Social Security Law and Practice* sec. 43:86, at 59 (1987) (describing "exertional" and "non-exertional" impairments).

**6.** See 20 C.F.R. sec. 404.1567(c) (defining "medium work" to entail "lifting no more than 50

pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.").

**7.** In its "Memorandum Opinion and Order", the district court discussed the medical evidence in this case; but the court made no specific reference to the availability of suitable jobs, other than to note that "the [ALJ] concluded that the plaintiff could perform medium work activity except for that involving climbing, balancing, or working at heights or around dangerous machinery."

al expert (VE) regarding the availability of suitable jobs for Welch to perform. Instead, the ALJ relied exclusively upon the "grids" to make his determination.

We have consistently held that "the Secretary may rely on the grids only in 'appropriate cases.'" *Gibson v. Heckler*, 762 F.2d 1516, 1520 (11th Cir.1985). As we recently explained,

> "Exclusive reliance on the grids is not appropriate either when claimant is unable to perform a full range of work at a given functional level or when a claimant has non-exertional impairments that significantly limit basic work skills." ...
> The grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation.... The grids also may not be used when *the claimant's non-exertional impairments are severe enough to preclude a wide range of employment at the level indicated by the exertional impairments....*

*Walker*, 826 F.2d at 1002–03 (emphasis in original) (quoted and cited sources omitted).[8]

The ALJ found that Welch has "nonexertional limitations", so that Welch cannot do "work requiring climbing, balancing, working at heights or around dangerous machinery...." The ALJ also stated that "the claimant has a severe impairment, i.e., an impairment which significantly limits his ability to perform basic work activities." Although the ALJ concluded that Welch could do some "medium work", he failed to "make a specific finding as to whether the nonexertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations." *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir.1985). We hold that the ALJ's exclusive reliance upon the grids to make his determination on job availability was inappropriate under

the circumstances. *See Gibson*, 762 F.2d at 1520 ("the regulations are only applicable where each variable on the appropriate grid matrix accurately describes the claimant's situation as a matter of objective historical fact.").

■ The ALJ stated as follows: "[a]lthough the claimant's additional nonexertional limitations do not allow him to perform the full range of medium work, using the above-cited rule as a framework for decisionmaking, there are a significant number of jobs in the national economy which he could perform." Yet, in the absence of any specific findings on this issue, the ALJ's determination was inappropriate. "[O]nce the ALJ found that [the claimant] could not perform his past relevant work, the burden was on the Secretary to prove by a preponderance of the evidence that [the claimant] could perform a job which existed in substantial numbers in the economy." *Gibson*, 762 F.2d at 1521. Although the ALJ may rely upon the grids as a "framework" to determine whether the Secretary has met this burden, "where a claimant's condition is not met by the criteria of a rule the disability determination is generally made by reference to individualized evidence and principles relating to the assessment of individual factors...." *Id.* at 1521 n. 7. Put differently, the ALJ must "articulate specific jobs that exist and that the claimant is capable of performing." *Cowart*, 662 F.2d at 736 n. 1. *See also* 20 C.F.R. sec. 404.1569 ("give full consideration to all relevant facts in accordance with the definitions and discussions under vocational considerations."). In this case, the ALJ made no specific findings on the question of the availability of particular jobs; he failed to refer to any sources that might indicate whether or not suitable "work exists in substantial numbers in the national economy." *Gibson*, 762 F.2d at

---

8. See, e.g., 20 C.F.R. sec. 404.1569 ("The rules in Appendix 2 do not cover all possible variations of factors.... [W]e do not apply these rules if one of the findings of fact about the person's vocational factors and residual functional capacity is not the same as the corresponding criterion of the rule."); 20 C.F.R. pt. 404, subpt. P, app. II sec. 200.00(a) ("Where any one of the findings of fact does not coincide with the corresponding criterion of a rule, the rule does not apply in that particular case and, accordingly, does not direct a conclusion of disabled or not disabled."); *id.* sec. 200.00(e) (providing that grids are not controlling when claimant has "a non-exertional type of impairment.").

1518 n. 2 (discussing the Dictionary of Occupational Titles and the Occupational Outlook Handbook).

As in *Gibson*, "we remand the case to the district court with instructions to remand to the Secretary for appropriate fact-finding. On remand, the ALJ should consider all the facts and circumstances of the case in accordance with the statutory and regulatory principles applicable in cases where the grids do not apply." *Id.* at 1521. We further note that, "[a]lthough there is no *per se* rule that a vocational expert be called to testify," *Cowart*, 662 F.2d at 736, "[t]he preferred method of demonstrating job availability when the grids are not controlling is through expert vocational testimony." *Francis v. Heckler*, 749 F.2d 1562, 1566 (11th Cir.1985).[9]

As we previously explained, "the ALJ has a basic obligation to develop a full and fair record." *Cowart*, 662 F.2d at 735. A "full and fair record" not only ensures that the ALJ has fulfilled his "duty ... to 'scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts' ", but it also enables us on appeal "to determine whether the ultimate decision on the merits is rational and supported by substantial evidence." *Id.* (quoted and cited sources omitted). In this case, a "full and fair record" may not require the use of expert testimony; but at the very least, there must be specific findings on whether suitable "work exists in substantial numbers in the national economy."

VACATED and REMANDED.

---

[9.] Welch has made other arguments which we find unpersuasive. He argues (1) that the ALJ's findings on Welch's physical condition are not supported by "substantial evidence"; (2) that the ALJ improperly considered and determined Welch's subjective complaints of pain; and (3) that Welch ineffectively waived his right to counsel at the hearing before the ALJ.