Eileen A. TETREAULT, Plaintiff,

v.

Kenneth S. APFEL, Commissioner of Social Security, Defendant.

No. 96–137–Civ–ORL–3–ABF(22).

United States District Court,
M.D. Florida,
Orlando Division.

March 13, 1998.

---

William C. Davis, Jr., Law Office of William C. Davis, Jr., Jacksonville, FL, for plaintiff.

I. Randall Gold, U.S. Atty's Office, Orlando, FL, for defendants.

## ORDER

BAKER, United States Magistrate Judge.

This is an action for review of a decision denying a claim for disability insurance benefits and supplemental security income under the Social Security Act.

## I. PROCEDURAL BACKGROUND

The administrative proceedings leading to this action began on August 3, 1993, when Plaintiff, Eileen Tetreault, filed applications for a period of disability and disability insurance benefits and supplemental security income (SSI), alleging a disability onset date of May 28, 1993 (R. 44–51). At hearing, Plaintiff amended the date to reflect a September 28, 1992 onset (R. 32). The applications were administratively denied initially, and upon reconsideration (R. 52–56; 59–63). Pursuant to Plaintiff's request, a hearing was held before an Administrative Law Judge (the "ALJ") on April 25, 1995 (R. 29). Plaintiff appeared and testified (R. 30–43).

The ALJ, in a decision dated July 31, 1995, found that Plaintiff was entitled to a period of disability and benefits commencing September 28, 1992 but that her disability ceased on January 18, 1994 (R. 23–25). Plaintiff petitioned to the Appeals Council, which denied review on December 26, 1995, making the ALJ's decision the final decision of the Commissioner (R. 4). This action timely followed.

The parties have consented to the jurisdiction of the United States Magistrate Judge. The Court has reviewed the administrative record and the briefs of the parties. Thereon, the decision of the Social Security Administration is **AFFIRMED.**

## II. NATURE OF DISABILITY CLAIM
### Basis for Claimed Disability

Plaintiff claims she is disabled due to the effects of Addison's disease (R. 33–36; 44–51; 73).

## Summary of Evidence Before the Administrative Law Judge

Plaintiff was 48 years old at the time she filed her applications (R. 44), with a ninth grade education and previous work experience as a manager and cleaning person at a motel (R. 76, 80–85). At hearing, Plaintiff testified that she had been diagnosed with Addison's disease, and was suffering from swelling (from water retention), weight loss, fatigue, cramping and loss of concentration (R. 33–42).

The medical evidence before the ALJ confirms the presence of Addison's disease. On September 27, 1992, Plaintiff presented to the emergency room at University Community Hospital complaining of "nausea, weakness, pains in joints and not able to eat or sleep" (R. 116–117). She was given a diagnosis of "fatigue."

On June 12, 1993, she returned to the hospital, complaining of continued weight loss and weakness, as well as shortness of breath (R. 125–139). She was diagnosed with dehydration, with hypotension and was admitted for 23 hour observation. She improved significantly upon the administration of intravenous fluids and underwent a lung scan (which was normal), a chest x-ray (which revealed no acute cardiopulmonary disease), and an abdominal x-ray (no abnormalities noted) (R. 134–135).

Plaintiff was admitted to Landmark Medical Center on July 20, 1993, complaining of lethargy, shortness of breath, lightheadedness, anorexia, and a 50 lb. weight loss over two years (R. 140). She was diagnosed with Addison's disease and placed on steroid therapy (R. 140–148). Dr. Leon Puppi discharged Plaintiff on July 29, 1993, noting that her response to the therapy was "excellent" (R. 141). In a medical report provided to the SSA on October 1, 1993, Dr. Puppi confirmed the diagnosis of Addison's disease and opined that Plaintiff is "unable to stand for any significant length of time, tiring very quickly, and is unable to carry mild to moderately heavy objects" (R. 149). Dr. Puppi did not mention in his report any pulmonary

disease or difficulties, and noted that he had seen Plaintiff once after her discharge, on August 5, 1993 (R. 150).

The ALJ also reviewed a consultative examination report of Lawrence Field, D.O. (an internist), dated January 18, 1994. In the report, Plaintiff reported to Dr. Field that she does well when she is taking her medication, but she has been unable to afford it (R. 151). Upon physical examination, Plaintiff was 5'1" tall and 116 pounds. She had clear lungs, regular heart rate and rhythm, no muscle spasms, no loss of range of motion of the joints, normal grip strength, normal gait and normal neurological functioning (R. 152-155). Pulmonary testing showed mild restrictive lung disease (R. 155), and Dr. Field diagnosed Addison's disease and mild restrictive lung disease (R. 154). No limitations were noted.

Plaintiff was treated by Joseph Tucci, M.D. from September 23, 1994 to December 26, 1994 (R. 157-160). Dr. Tucci's notes confirm the adrenaline insufficiency. She was treated with Cortisone. Plaintiff was also treated at Lacanto Health center in Tampa from June 14, 1994 to February 23, 1995 (R. 161-179). Again, the diagnosis of Addison's disease was noted, but no limitations appear.

Additional evidence was submitted to the Appeals Council, consisting of treatment notes from Seminole County Public Health Department (R. 181-186), dated July 19, 1995 to August 9, 1995. The records do not indicate any limitations on Plaintiff's activities, but appear to address medication concerns.

The ALJ determined that during the time period of September 28, 1992 through January 18, 1994, Plaintiff's symptoms of Addison's disease were so persistent that she was unable to perform any work activities and was thus disabled (R. 23) The ALJ concluded, however, that since her condition was brought under control by medication by January 18, 1994, Plaintiff has not been precluded from light work activities and is therefore not disabled.

## ANALYSIS

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir.1988), and whether the findings are supported by substantial evidence *Richardson v. Perales*, 402 U.S. 389, 390, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Substantial evidence is more than a scintilla, and it must do more than create a suspicion of the existence of the fact to be established; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Walden v. Schweiker*, 672 F.2d 835, 838-839 (11th Cir. 1982).

The Court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the SSA's decision. *Walker v. Bowen*, 826 F.2d 996, 1000 (11th Cir.1987). Even if the Court finds that the evidence weighs against the SSA's decision, the Court must affirm if the decision is supported by substantial evidence. *Allen v. Schweiker*, 642 F.2d 799, 800 (5th Cir.1981), *see also Harwell v. Heckler*, 735 F.2d 1292 (11th Cir.1984) and *Martin v. Sullivan*, 894 F.2d 1520 (11th Cir.1990). The Court may not reweigh the evidence or substitute its own judgment, even if the Court finds that the weight of the evidence is against the SSA's decision. *Martin*, 894 F.2d at 1529. While there is a presumption in favor of the SSA's findings of fact, no such presumption attaches to the ALJ's legal conclusion about the proper standards to be applied in evaluating claims. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir.1986); *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir.1988).

### Proper Legal Standards

■ Although Plaintiff's argument is cast in terms of lack of substantial evidence to support the finding, the only point advanced by Plaintiff as error is her contention that the diagnosis of Addison's Disease warrants an automatic determination of disability because Addison's disease is a listed impairment under the Grids (Plaintiff's Brief at 6-7). This contention is incorrect.

Addison's Disease is mentioned by name nowhere in the Regulations. Adrenal cortical insufficiency is a listed impairment only for children. 20 C.F.R. Part 404, Subpart P, Appx. 1, § 109.07 (cross referencing § 109.00

1230

C and E). The only section of the Grids that deals with the adrenal cortex is § 9.06. But that section refers to *hyper* function, not the adrenal insufficiency associated with Addison's Disease.

Thus, the diagnosis of Addison's disease alone, without evidence establishing impairment of an affected body system, is insufficient to warrant a finding of disability. *See Christman v. Sec'y of Health and Human Services,* 9 F.3d 106, 1993 WL 424860 (6th Cir.1993) *(unpublished decision ).*

### Substantial Evidence Supports the Findings

██ Here, the record indicates that Plaintiff's condition was controllable with medication. The medical records do not identify limitations in any body system, and examinations and test results after diagnosis and medication showed no marked abnormalities whatever. There is substantial evidence to support the ALJ's finding that, since January 18, 1994, Plaintiff's condition was not severe enough to be considered disabling.

### CONCLUSION

As the proper legal standards were applied and substantial evidence supports the decision, the decision is **AFFIRMED.**