**Ramiro ZALDIVAR, Plaintiff,**

v.

**Kenneth S. APFEL, Commissioner of Social Security, Defendant.**

**No. Civ.A.1:98–CV2017TWT.**

United States District Court, N.D. Georgia, Atlanta Division.

Jan. 25, 2000.

---

Gary Flack, Gary Flack & Associates, Atlanta, GA, for Ramiro Zaldivar, plaintiff.

David Wright, Office of United States Attorney, Atlanta, GA, for Kenneth S. Apfel, defendant.

## ORDER

THRASH, District Judge.

This is an action, pursuant to 42 U.S.C. § 405(g), to review the Commissioner's denial of Social Security disability benefits. It is before the Court on the Report and Recommendation of the Magistrate Judge [Doc. 19], who recommended that the case be remanded to the Commissioner for further consideration. For the reasons set forth below, this Court declines to adopt the Report and Recommendation. After careful review of the record, this Court affirms the Commissioner's denial of Social Security disability benefits.

## I. BACKGROUND

Plaintiff was employed as a manager at a travel agency from 1977, until April, 1994, when he was terminated because financial difficulties required the agency to close the office managed by Plaintiff. On April 30, 1994, Plaintiff applied for Supplemental Security Income and Disability Insurance Benefits alleging that he suffers from multiple sclerosis and that it prevents him from performing his relevant past work as manager of a travel agency. At the time, Plaintiff was 56 years old. He attended Georgia Tech for three years. After service in the Navy he worked most of his adult life as a travel agent.

Plaintiff first began having symptoms diagnosed as multiple sclerosis ("MS") in 1958. MS is a progressive disease of the central nervous system that destroys the protective covering of nerve fibers in both the brain and the spinal cord. The disease is characterized by episodic symptoms that include numbness, weakness, incontinence, slurred speech, fatigue, clumsiness and unsteady gait, blurred or double vision, and mood changes. He received medical treatment and did well thereafter. According to Plaintiff, he began to suffer occasional episodes of slurred speech, double vision and weakness to his right side in the 1970's. In March, 1990, he awoke one morning suffering weakness in his right arm and was unable to walk. Plaintiff also noticed numbness to the right side of his face, lack of coordination in his right arm, and some difficulty speaking. He visited an emergency room, which referred him to Dr. Jeffrey Woodward. Dr. Woodward diagnosed Plaintiff as suffering from MS and prescribed the steroid Prednisone. The Prednisone dosages prescribed by Dr. Woodward in March, 1990, and March, 1991, relieved Plaintiff's symptoms. Plaintiff did not visit Dr. Woodward again for three years after the March, 1991, treatment.

Two weeks after he lost his job at the travel agency in April, 1994, Plaintiff visited Dr. Woodward again and complained that his MS symptoms were reoccurring. During this visit, Dr. Woodward observed that Plaintiff suffered mild slurring of the speech, minimal gait difficulties, mild decreases in fine finger movements of the right hand, and slow cognitive process. Dr. Woodward attributed many of the symptoms to Plaintiff's recent job dismiss-

al from the travel agency and suspected "some degree of psychological overlay to his symptoms." (R. at 150–51.) Dr. Woodward prescribed Prednisone to treat the MS symptoms, as he had done for Plaintiff's previous episodes.

Four days after this April 26, 1994, visit to Dr. Woodward, Plaintiff applied for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). Plaintiff alleged in the filing that MS has caused him to acquire a speech impediment that has become so severe as to prevent him from performing his relevant past work as manager of a travel agency. Both the applications for SSI and DIB were denied by the Commissioner initially and then again on reconsideration. As a result, Plaintiff requested a *de novo* administrative hearing. The hearing was held on May 7, 1996, and Plaintiff elected to represent himself without the benefit of counsel in that proceeding. At the hearing, the Administrative Law Judge ("ALJ") noted that the evidence in the record at that point consisted of 26 exhibits. These exhibits detail certain aspects of Plaintiff's medical history through 1994. During the hearing Plaintiff testified that, in addition to his MS, he is diabetic and suffered a heart attack on July 17, 1995. Plaintiff admitted, however, that the heart condition has not affected his MS. Following his review of the exhibits provided and Plaintiff's testimony, the ALJ informed Plaintiff that a two-year gap from 1994, to 1996, existed in the record; advised Plaintiff how to remedy that gap; offered to assist Plaintiff by requesting additional documentation from Plaintiff's physicians; and directed Plaintiff to submit to a second consultative examination since the previous one was more than two years old. This examination was performed by Dr. James L. Fisher.

On October 23, 1996, the ALJ issued a decision denying benefits to Plaintiff. This decision was based on the record as it existed at the May, 1996, administrative hearing plus additional medical evidence that had since been obtained. The additional medical evidence consisted of (1) an August 21, 1995, report of a visit by Plaintiff to his physician, who stated that Plaintiff's neurological status had not deteriorated sufficiently to support a diagnosis that Plaintiff's multiple sclerosis had existed as long as Plaintiff alleged; (2) an October 2, 1995, report of a doctor's visit Plaintiff made for other ailments, but which includes a notation that Plaintiff's speech was slurred and he was stuttering; (3) an April 18, 1996, report in which Plaintiff's physician stated that an MRI was abnormal and strongly suggestive of multiple sclerosis; (4) other medica records, which mostly recite diabetic complications Plaintiff was suffering at the time; (5) and a report by Dr. Fisher of a July 2, 1996, consultative examination where Dr. Fisher found that while Plaintiff did exhibit an array of symptoms that suggested MS, these symptoms did not seem "profoundly complicating." Based on this evidence, the ALJ made findings of fact that while Plaintiff suffers from severe impairments that limit him to sedentary work, Plaintiff's limitations nevertheless do not preclude him from performing his past relevant work as the manager of a travel agency. In detail, the ALJ's findings of facts were as follows:

1. The claimant met the disability insured status requirements of the Social Security Act on April 8, 1994, the alleged disability onset date, and continued to meet them through December 31, 1998.

2. The claimant has not engaged in substantial gainful activity since the alleged disability onset date.

3. The medical evidence establishes that the claimant has severe multiple sclerosis, diabetes mellitus, and coronary artery disease, but does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4.

4. The claimant's subjective complaints are disproportionate to the medical evidence and are not fully credible, considering both medical and other evidence.

5. The claimant has the residual functional capacity to perform the physical exertion and nonexertional requirements of work except for (20 CFR 404.1545/416.945).

6. The claimant has the residual functional capacity to perform work-related functions except for work involving prolonged standing and walking, balancing, working around heights or other hazardous machinery, high humidity, or vibration.

7. The claimant's past relevant work as a manager of a travel agency did not require the limitations set forth in Finding No. 6.

8. The claimant's impairments do not prevent him from performing his past relevant work.

9. The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision.

(R. at 30–31.)

■ Following the ALJ's decision, Plaintiff sought review by the Appeals Council. On April 20, 1998, the Appeals Council issued an order denying review of the ALJ's decision, and Plaintiff thereafter filed this action to review the Commissioner's ruling pursuant to 42 U.S.C. § 405(g). The appeal was submitted in accordance with 28 U.S.C. § 636(b) and Local Rule 72.1.D.(2) to a United States Magistrate

Judge for a Report and Recommendation. At the conclusion of an April 20, 1999, hearing, the Magistrate Judge ruled for Plaintiff and directed Plaintiff's counsel to prepare a Report and Recommendation remanding the action under sentence 4 of 42 U.S.C. § 405(g) [Doc. 14].[1] The Magistrate Judge signed the Report and Recommendation drafted by Plaintiff's counsel although it did not specify whether the remand was pursuant to sentence 4 or sentence 6 of Section 405(g).

## II. STANDARD OF REVIEW

■ The scope of judicial review of a denial of Social Security benefits by the Commissioner is limited. This Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. The only function of the Court is to determine whether there is substantial evidence in the record to support the findings and decision of the Commissioner and whether proper legal standards were applied in the fact-finding process. The findings of the Commissioner are conclusive if supported by substantial evidence and if proper legal standards were applied. *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir.1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir.1987); *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir.1986); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983).

■ Substantial evidence is more than a scintilla, but less than a preponderance. It means such relevant evidence as a rea-

1. The Report and Recommendation is largely a verbatim recitation of the Plaintiff's Brief. The Court agrees entirely with the recent statement by Judge Julie Carnes that a report and recommendation drafted by counsel for the prevailing party "is not helpful to this Court." ·*Cooper v. Apfel*, Case No. 97–CV–3458–JEC (Order of February 22, 1999). "A mere rubber-stamp of a party's findings does not serve to advise this Court with regard to the Magistrate's personal appraisal of the rec-

ord." *Id*. A report and recommendation from a magistrate judge should be the work of a neutral and impartial judicial officer. Where it is not, as in this case, the district court is required to review the record *de novo*, as this Court has done. Even if the Court agreed with the Magistrate Judge that remand was required, it would not adopt the Report and Recommendation because it is the work of an advocate representing the interests of a client rather than the work of a neutral and impartial judicial officer.

sonable mind might accept as adequate to support a conclusion and it must be enough to justify a refusal to direct a verdict were the case before a jury. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Hillsman,* 804 F.2d at 1180; *Bloodsworth,* 703 F.2d at 1239. In determining whether substantial evidence exists, the Court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. *Chester v. Bowen,* 792 F.2d 129, 131 (11th Cir.1986). In contrast, the Court's review of the ALJ's application of legal principles is plenary. *Walker,* 826 F.2d at 999.

## III. DISCUSSION.

### A. CLAIMS OF ERROR ALLEGEDLY COMMITTED BY THE COMMISSIONER

#### 1. FULL AND FAIR RECORD

■ Plaintiff contends that the Commissioner's decision should be remanded because the ALJ failed to develop a full and fair record. A hearing before an ALJ is not an adversary proceeding, and the ALJ has a basic obligation to develop a full and fair record. *Welch v. Bowen,* 854 F.2d 436, 438 (11th Cir.1988); *Cowart v. Schweiker,* 662 F.2d 731, 735 (11th Cir. 1981). This obligation applies regardless of whether the claimant is represented by counsel or has waived the right to representation. *Cowart,* 662 F.2d at 735. In cases where the right to counsel has not been waived and the claimant is unfamiliar with hearing procedures, the obligation to develop a full and fair record rises to a "special duty". *Id.* This special duty requires the ALJ to " 'scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts,' " *Id.* (quoting *Cox v. Califano,* 587 F.2d 988, 991 (9th Cir.1978)), and "[t]he ALJ must be 'especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited,' " *Id.* (quoting

*Rosa v. Weinberger,* 381 F.Supp. 377, 381 (E.D.N.Y.1974)).

In *Cowart v. Schweiker,* 662 F.2d 731, 735 (11th Cir.1981), the Eleventh Circuit remanded a Social Security disability case to the district court with instructions that it be returned to the ALJ for further proceedings. The plaintiff in that case suffered complications following surgery to correct a blood vessel malformation in her brain and sought disability benefits because she allegedly could no longer perform her relevant past work as a nurse. The ALJ agreed that the plaintiff could no longer perform as a nurse but found that she could engage in sedentary world. Plaintiff appealed this ruling and argued successfully on appeal to the United States Court of Appeals for the Eleventh Circuit that the ALJ failed to develop a full and fair record by not eliciting testimony from Plaintiff's husband and by not stating the weight he accorded the testimony he considered.

■ Plaintiff contends that the actions of the ALJ in this case necessitate remand to the Commissioner, just as in *Cowart.* Plaintiff says that he was unrepresented by counsel at the hearing and contends on four grounds that the ALJ failed to develop a full and fair record. This Court must note at the outset, however, that while it is true that Plaintiff was unrepresented by counsel at the administrative hearing, Plaintiff unambiguously waived his right to counsel at that hearing. (R. at 44, 46.) Plaintiff chose to proceed without counsel because the lawyers that he talked to wanted 20 percent of any recovery. (R. 44). Accordingly, while the ALJ had a duty to develop a full and fair record, Plaintiff's explicit waiver of the right to counsel excused the ALJ from becoming subject to a "special duty" to assist Plaintiff. *Id.* ("Where the right to representation has not been waived, as in this case, the ALJ's 'basic obligation to develop a full and fair record rises to a special duty when an unrepresented claimant unfamiliar with hearing procedures appears be-

fore him.' "). Even if, however, the ALJ somehow was subject to this heightened "special duty," he clearly satisfied it in this case.

■ First, Plaintiff contends that the ALJ failed to question Plaintiff's roommate of 24 years, Mr. Jimmie Oney, who accompanied Plaintiff to the hearing. The record of the hearing before the ALJ, however, does not support this contention. While the ALJ may not have questioned Mr. Oney at length as one might question a witness in a trial before this Court, Mr. Oney was allowed to participate in the hearing and did so. He testified that he was working with Plaintiff at the time of Plaintiff's termination and corroborated Plaintiff's statement that Plaintiff "was not stuttering at all when he was at work." (R. at 49.) He also testified to the circumstances regarding Plaintiff's July, 1995, heart attack. (R. at 54.) Furthermore, this Court notes that the ALJ's failure to elicit more testimony from Mr. Oney does not rise to the level of reversible error that existed in *Cowart*. The Eleventh Circuit's emphasis in *Cowart* on the ALJ's failure to examine Plaintiff's husband was but an example of how "[t]he ALJ apparently made little or no effort to elicit evidence favorable to Mrs. Cowart's claim." *Id.* ("For example, at the hearing, the ALJ had Mrs. Cowart's husband, David, before him, yet he failed to ask David any questions regarding Mrs. Cowart's condition."). As this Court shows in great detail below, the ALJ in this case expended much effort to develop a full and fair record of Plaintiff's case.

■ Second, Plaintiff contends that the ALJ did not obtain records of Plaintiff's July 1995 heart attack from the hospital or a cardiac evaluation from Plaintiff's internist. This contention is without merit because there was no reason for the ALJ to seek such records. The ALJ specifically asked Plaintiff whether his July 1995 heart attack had affected in any way his ability to perform his past work as a travel agent, which Plaintiff admitted was essentially a

desk job and not physically arduous at all. (R. at 51, 56, 59.) Plaintiff replied, "It's remained, it's remained the same. And it hasn't affected me as far as that." (R. at 57.) This direct admission by Plaintiff himself that his heart condition is irrelevant to his disability claim excused the ALJ from seeking medical records on this issue.

■ Third, Plaintiff contends that the ALJ did not fulfill his "special duty to develop inadequacies in the medical record," including a psychological evaluation. In fact, the ALJ bent over backwards to help Plaintiff develop inadequacies in the medical record. The ALJ noted at the hearing that the record at that point was blank from the time Plaintiff saw a consultative examiner two years before and stated that he would send letters to Plaintiff's physicians requesting more information before rendering a decision. (R. at 60, 62–63.) The ALJ also told Plaintiff that he needed more information from Plaintiff to help him determine at what point Plaintiff's MS condition became so severe that Plaintiff was unable to perform work. (R. at 59–61.) Additionally, the ALJ ordered a new consultative examination since the previous one was more than two years old. (R. at 64.) The ALJ did not simply ignore the need to develop the record fully so that he could make his findings. He specifically explained to Plaintiff that Plaintiff had not yet provided sufficient information for the ALJ to make a determination that Plaintiff at some point became unable to work. Based on these facts, Plaintiff has failed to show that the ALJ did not create a full and fair record.

As for the lack of a psychological evaluation, this Court does not believe that there was sufficient justification at the administrative hearing for the ALJ to order a consultative psychological examination. First, Plaintiff did not argue before the ALJ that he possessed any psychological disability. Second, of all the evidence presented to the ALJ in this case, the only

noteworthy statement concerning mental problems appears to be Dr. Woodward's April 26, 1994, notation in his records that he "certainly cannot rule out some degree of psychological overlay to his symptoms." (R. at 150.) Third, the consultative examinations conducted showed no sign of altered mental state, other than that Plaintiff was "anxious." (R. at 208.) Fourth, Plaintiff's reported daily activities do not indicate mental problems. Plaintiff stated he engages in many normal activities such as driving, shopping, cooking, reading, watching television, vacuuming and washing dishes. (R. at 130.) Based on these facts, this Court cannot say that the ALJ's failure to order a consultative psychological examine constitutes inadequate development of a full and fair record.

Plaintiff's fourth contention is that the ALJ did not develop the record regarding the demands of Plaintiff's past relevant work as manager of a travel agency. This contention is also without merit. Both documentary evidence and testimony the ALJ elicited from Plaintiff informed the ALJ of the demands of Plaintiff's travel agency work. The ALJ specifically asked Plaintiff the type of work he did at the travel agency, whether he dealt with clients, office management, or both, whether it was essentially a desk job, and whether there was anything at all physically arduous about the job. (R. at 51, 59.) Plaintiff's application for benefits, which was introduced into the record, also explained Plaintiff's duties at the travel agency. (R. at 108.) This Court concludes that the inquiry by the ALJ sufficiently developed the record such that the ALJ understood Plaintiff's duties as manager of a travel agency and legitimately could make findings of fact that Plaintiff's past work did not require him to perform work he could not do—namely prolonged standing and walking, balancing, working around heights or hazardous machinery, high humidity or vibration. (R. at 31.) Fifth, Plaintiff contends that the ALJ should have sought the advice of a vocational expert. Once the plaintiff establishes a *prima facie* case that his impairment prevents him from performing his past occupation, the burden shifts to the Commissioner to produce evidence that the plaintiff is able to perform alternative substantial gainful work that exists in the national economy. *Welch v. Bowen,* 854 F.2d 436, 440 (11th Cir.1988); *Cowart,* 662 F.2d at 736. Ordinarily, the preferred method of demonstrating that the plaintiff can perform specific jobs is through the testimony of a vocational expert, although there is no *per se* rule that a vocational expert be called to testify. *Cowart,* 662 F.2d at 736. This Court notes, however, that the need for a vocational expert does not arise until the plaintiff has met his burden that he cannot perform his relevant past work. Because Plaintiff in this case did not meet that burden before the ALJ, the need for the ALJ to consult a vocational expert did not arise.

## 2. FINDINGS OF THE ALJ

Plaintiff next contends that the ALJ improperly found that Plaintiff can perform his relevant past work as a travel agent. An individual is considered to be disabled for purposes of disability benefits if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment or impairments must result from anatomical, psychological or physiological abnormalities which are demonstrable by medically accepted clinical or laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do his previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2) and (3).

■ The burden of proof in a Social Security disability case is divided between the claimant and the Commissioner. The claimant bears the initial burden of establishing the existence of a "disability" by demonstrating that he or she is unable to perform his or her former type of work. Once the claimant has met this burden, the burden shifts to the Commissioner to show that, considering claimant's age, education, work experience and impairment, there are some other types of jobs that exist in the national economy that the claimant can perform. The overall burden, however, rests upon the claimant to prove that he or she is unable to engage in any substantial gainful activity that exists in the national economy. *Boyd v. Heckler,* 704 F.2d 1207, 1209 (11th Cir.1983).

As summarized below, a five-step sequential analysis must be used when evaluating a disability claim.

1. The Commissioner must determine whether the applicant is currently working; if so, the claim is denied.

2. The Commissioner must determine whether the claimed impairment is severe; that is, whether the impairment or combination of impairments significantly limits the individual's physical or mental ability to do basic work activities; if not, the claim is denied.

3. The Commissioner must determine whether the impairment equals or exceeds in severity certain impairments described in the impairment listings in the regulations; if it does, the claimant is automatically entitled to disability benefits.

4. The Commissioner must determine whether the applicant has sufficient residual functional capacity to perform past work; if so, the claim is denied.

5. The Commissioner must determine, on the basis of claimant's age, education, work experience, and residual functional capacity, whether the applicant can perform any other gainful and substantial work within the economy; if so, the claim is denied.

20 C.F.R. §§ 404.1520 to 404.1576.

■ The record in this case contains substantial evidence to support the ALJ's findings and his ruling that Plaintiff, at the time of the ALJ's decision, could perform his past relevant work as manager of a travel agency. First, while the medical records acknowledge Plaintiff's complaints that he has speech difficulties, for the most part, they assess these difficulties as minimal. (R. at 150, 158, 209, 213.) Indeed, most of the medical records from Dr. Woodward's April 26, 1994, examination through the ALJ's October 23, 1996, decision contain very little documentation of Plaintiff's difficulties with MS.

Second, there exist questions as to Plaintiff's credibility for the testimony he provided. A 1994 consultative examination report said that Plaintiff exhibited "histrionic features." (R. at 135.) Also, Plaintiff admitted at the hearing that he did not stutter at the time he was last working, which was less than a month before he filed for SSI and DIB, and that there would not have been any reason why he could not have gone to work the next day if he had not been dismissed from the job. (R. at 49, 52.) In addition, Dr. Woodward said in his April 26, 1994, diagnosis that he could not rule out some degree of "psychological overlay" to Plaintiff's symptoms. (R. at 150.)

Third, evidence exists that Plaintiff still engages in numerous activities and that his past relevant work as a travel agent—which Plaintiff admitted was essentially a desk job and not physically arduous at all—is not any more rigorous than these activities. (R. at 51, 59.) While Plaintiff said that he has difficulty walking because he has trouble keeping his balance, Plaintiff testified that he walks around the mall in the mornings as part of his daily exercise and has never needed a cane to assist him. (R. at 57.) Plaintiff also testified that he drives himself and has no difficulty doing so, goes shopping, and occasionally

will deliver tickets for the travel agency where his roommate, Mr. Oney, works. (R. at 58–59, 130.) Finally, Plaintiff helps with chores around the house, including vacuuming, washing dishes and cooking. (R. at 58, 130.) When this Court looks at all this evidence, it concludes that substantial evidence exists to support the ALJ's conclusion that Plaintiff could perform his past relevant work as manager of a travel agency.

## B. NEW EVIDENCE NOT PRESENTED TO THE ALJ

 Plaintiff next contends that the Commissioner's decision should be remanded because the Appeals Council improperly denied review of the ALJ's decision and made inadequate findings. After the ALJ issued its decision, Plaintiff retained counsel who submitted additional medical reports to the Appeals Council. When the Appeals Council refuses to consider "new evidence" submitted to it and denies review of the appeal, that denial of review is subject to judicial review if it amounts to an error of law. *Falge v. Apfel*, 150 F.3d 1320, 1324 (11th Cir.1998); *Keeton v. Department of Health and Human Svcs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). The district court should make a *de novo* determination whether remand to the ALJ is warranted. *Caulder v. Bowen*, 791 F.2d 872, 875 (11th Cir.1986). The burden for such a determination is on the plaintiff, who must show that (1) noncumulative new evidence exists, (2) the evidence is material such that a reasonable possibility exists that it would change the administrative result, and (3) good cause exists for the applicant's failure to submit the evidence at the appropriate administrative level. *Falge*, 150 F.3d at 1323 (11th Cir.1998); *Keeton*, 21 F.3d at 1067; *Cannon v. Bowen*, 858 F.2d 1541, 1546 (11th Cir.1988); *Caulder*, 791 F.2d at 877. Plaintiff has not met this burden.

 The Appeals Council did not err when it rejected Dr. Shepherd's psycholog-ical evaluation as the basis for review. The Appeals Council provided exceptionally detailed reasons why it discredited Dr. Shepherd's assessment of Plaintiff. (R. at 3–5.) First, the Appeals Council noted that Dr. Shepherd made his findings of speech impairment based on medical judgments that he is not professionally qualified to render as a psychologist and not a medical doctor. (R. at 4.) Second, Dr. Shepherd did not even have Plaintiff's past medical records at his disposal so that he could examine whether (1) Plaintiff's condition really had worsened by the time he examined Plaintiff or (2) he instead merely viewed the same physical condition differently than numerous medical doctors who had examined Plaintiff. (R. at 4.) For these reasons, Dr. Shepherd's findings are not material and cannot be considered new evidence that would warrant remand of this case to the ALJ for further findings.

 The evaluation conducted by Dr. Cimera that was presented for the first time to the Appeals Council likewise does not constitute new evidence that would warrant remand to the ALJ for further findings. The evaluation provides no material, noncumulative, new information on Plaintiff's condition. According to Plaintiff, the MRI conducted by Dr. Cimera, whereby he was persuaded that Plaintiff had MS, is new evidence. (R. at 220–221.) This Court disagrees. The ALJ in his findings of fact specifically found that Plaintiff suffers from MS. (R. at 6.) Plaintiff's MS, therefore, already has been established, and the MRI does nothing to alter or amplify this finding. Dr. Cimera's personal observation of Plaintiff at the same time he read the MRI also is not new evidence. Dr. Cimera characterized Plaintiff's speech as only "mildly hesitant" and "perhaps" suggestive of some slurring of speech. (R. at 220.) Such evidence is not qualitatively different from prior reports by medical doctors and the finding of the ALJ that Plaintiff exhibited some slurring of speech, but not enough to disqualify him

from his past relevant work as manager of a travel agency.

Finally, Plaintiff argues that *Falge* should not be followed based upon the district court opinion in *Maroney v. Apfel,* 57 F.Supp.2d 1250 (N.D.Ala.1999). In *Maroney,* Judge Guin held that *Falge* is contrary to prior circuit precedent, including *Epps v. Harris,* 624 F.2d 1267 (5th Cir. 1980); *Mann v. Gardner,* 380 F.2d 182, 187 (5th Cir.1967); *Daniel v. Gardner,* 390 F.2d 32 (5th Cir.1968); and *Bowen v. Heckler,* 748 F.2d 629 (11th Cir.1984). Judge Guin then concluded that "[a]ll of the above cases suggest that it has long been the law of this circuit that courts may consider evidence first submitted to the Appeals Council in determining whether substantial evidence supports the Commissioner's decision." *Maroney,* 57 F.Supp.2d at 1260. He then concluded that following the rule of *Walker v. Mortham,* 158 F.3d 1177, 1188–89 (11th Cir.1998), he was required not to follow *Falge.*

It does not appear to the undersigned that *Falge* is clearly inconsistent with prior binding precedent. For example, in *Johnson v. Harris,* 612 F.2d 993 (5th Cir.1980), the court held:

> Of course, this Court is limited to an examination of the evidence before the ALJ and is not allowed to consider this new evidence in deciding if the administrative decision was correct. However, the existence of new evidence can create "good cause" for remand to the ALJ for additional findings.

*Id.* 612 F.2d at 998–99 (citing *Mann v. Gardner,* 380 F.2d 182, 187 (5th Cir.1967)). This case was cited with approval by the court in *Bowen v. Heckler,* 748 F.2d 629, 636 (11th Cir.1984) for the proposition that the existence of new evidence can create "good cause" for remand to the ALJ for additional findings. Finally, in *Keeton v. Dept. of Health and Human Svcs.,* 21 F.3d 1064, 1066 (11th Cir.1994), the court held:

> Under 42 U.S.C. § 405(g) the court may remand this case to the Secretary for consideration of new evidence if the

court finds that the new evidence is material and that good cause exists for Keeton's failure to incorporate this evidence into the record in the proceedings before the ALJ.

*Id.* at 1067. It remanded the action to the district court for the district court "to apply the three prong standard for remand to the Secretary." *Id.* at 1068 (citing *Caulder v. Bowen,* 791 F.2d 872, 877 (11th Cir.1986) (requirements for obtaining a remand include establishing new, noncumulative evidence; the evidence is material, that is, relevant and probative so that a reasonable probability exists that it would change the administrative results; and good cause for failure to submit the evidence at the administrative level)). The court in *Falge* explicitly cited this port on of the opinion in *Keeton* in holding that 42 U.S.C. § 405(g) governs the consideration of newly discovered evidence not presented to the ALJ. This Court does not believe that *Falge* is directly contrary to the holdings of the cases cited by Judge Guin in *Maroney.* The cases cited by Judge Guin do not explicitly articulate that newly discovered evidence is governed by 42 U.S.C. § 405(g), but they are not inconsistent with that. *Owens v. Apfel,* 71 F.Supp.2d 1372 (N.D.Ga.1999). Accordingly, this Court is bound to apply the *Falge* analysis to the new evidence submitted to the Review Council. For the reasons stated above, the Review Council did not err when it found that the new evidence was insufficient to warrant further review of the decision of the ALJ.

## IV. CONCLUSION

For the reasons set forth above, this Court DECLINES TO ADOPT the Report and Recommendation of the Magistrate Judge [Doc. 19] and AFFIRMS the decision of the Commissioner. The Clerk is directed to enter final judgment in favor of the Defendant.