[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCT 23, 2008
THOMAS K. KAHN
CLERK

_____

No. 08-12626
Non-Argument Calendar

_____

D. C. Docket No. 06-00105-CV-5

CAROL NEWTON,

Plaintiff-Appellant,

versus

MICHAEL J. ASTRUE,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

**(October 23, 2008)**

Before TJOFLAT, BIRCH and BLACK, Circuit Judges.

PER CURIAM:

Carol Newton appeals the district court's order affirming the Commissioner

of Social Security's denial of disability insurance and benefits, pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3), respectively. Newton argues that the Administrative Law Judge ("ALJ") improperly discredited testimony about pain in her right hand and failed to address the effect this limitation would have on her past relevant work. She also asserts that the district court erred by finding any such error by the ALJ to be harmless. For the reasons that follow, we VACATE and REMAND for further fact finding.

## I. BACKGROUND

Newton filed an application for Supplemental Security Income ("SSI") benefits and for disability insurance benefits ("DIB") in January 2004, based principally on damage to and around her right shoulder. See R2 at 86–90, 349–51. Her applications were denied both initially and on reconsideration. See id. at 53–56, 59–62. After these denials, she requested a hearing before an ALJ. See id. at 63–65. At an initial hearing, the ALJ ordered a "neurological work-up" of Newton, which she received from Dr. Robert H. Lynde in October 2005. See id. at 297, 389. After this evaluation, a regular hearing before a different ALJ was held in April 2006. See id. at 393.

Between 1991 and 2003, Newton held four different types of jobs: cook, deli worker, census bureau clerk, and certified nursing assistant ("CNA"). See id. at

2

124–29.  She sustained injuries to her right shoulder and forearm in October 2001 while working as a CNA.  See id. at 182.  After the injury, doctors recommended that she be placed on light duty work as a CNA, which she performed until a July 2002 surgery to remove a spur from her shoulder.  See id. at 175–81.  Post-surgery, she was deemed only able to perform modified light duty work, including limits on the amount of weight she could lift.  See id. at 166–75.  She continued at this status until she was asked to resign in November 2003 because of her inability to perform the duties of a CNA.  See id. at 90.

After her resignation, Newton did not see a doctor again until the March 2004 disability assessment for her SSI and DIB applications.  See id. at 240–47.  The doctor found her credible at that time for some shoulder pain but deemed her capable of performing light work.  See id. at 242, 245.  In the following months, she continued to complain of neck pain and eventually was found to have a herniated nucleus pulposus, or slipped disk, in September 2004.  See id. at 253.  She was referred to a neurologist, who noted that her pain had gradually gotten worse and identified a possible seizure disorder, for which a February 2005 EEG found no evidence.  See id. at 258, 262, 276.  Throughout this period, Newton continued to report shoulder pain.  See id. at 259, 264.

In October 2005, Dr. Lynde performed the functional capacity evaluation

ordered by the ALJ. See id. at 297–301. In his report, Dr. Lynde indicated that Newton complained of pain in her right shoulder, numbness and tingling throughout her right arm, and aching from her shoulder up through her neck. See id. at 297–98. He identified "giveaway" weakness in her extremities and determined that she suffered from degenerative joint disease and radiculopathy (nerve disease) in her neck. See id. at 299–300. Based on the condition of her right shoulder and arm, he concluded that she could lift a maximum of twenty pounds "occasionally" and less than ten pounds "frequently."[1] Id. at 308. Due to the low grip strength in her right hand, he deemed her unable to climb ladders, ropes, or scaffolds. See id. at 309. Additionally, Dr. Lynde found that her problems with grip strength and shoulder pain enabled her to only "occasionally" reach, handle, finger, and feel with her right hand and arm and limited her ability to push and pull with that arm. See id. At the hearing before the ALJ, the vocational expert identified three of Newton's past jobs as relevant work: deli worker, census clerk, and CNA. See id. at 411. He indicated that, based on the ALJ's hypothetical description of an individual in Newton's condition, she would be able to perform the work of a census bureau clerk as well as the work of a CNA as she had performed it post-injury. See id. at 411–412. However, the ALJ's

---

[1] The form Dr. Lynde filled out defines "occasionally" as "from very little up to 1/3 of an 8-hour day" and frequently as "from 1/3 to 2/3 of an 8-hour day." Id. at 308.

4

hypothetical did not include any mention of the problems with her right hand and arm, rather it solely discussed her inability to lift heavy weights and climb ladders. See id. at 411.

The ALJ ultimately found that Newton was not entitled to SSI or DIB benefits. See id. at 16–28. In making this determination, he went through the five-step evaluation process required under 20 C.F.R. § 404.1520(a). See id. at 17. He found that she had not been engaged in substantial gainful employment since November 2003 and that her impairments did not meet or equal the listed impairments in the regulations. See id. at 18–25. He then identified her residual functional capacity ("RFC") to be the same as the hypothetical he had posed to the vocational expert.[2] See id. at 25, 411. In determining her capacity, he generally discredited her testimony, deeming it inconsistent and contradictory. See id. at 25. He also found no medical nexus between the shoulder injury and weakness in her right hand and discounted her claims of seizures. See id. at 25–26. Additionally,

---

[2] In particular, he found that

> [S]he can frequently lift and carry ten pounds, and occasionally lift and carry twenty pounds. She can sit two hours at a time with a cumulative total of eight hours in an eight hour workday. She can stand and walk two hours at a time with a cumulative total of eight hours in an eight hour workday. She should avoid climbing ladders, ropes and scaffolds, and working at heights, around moving and dangerous equipment and concentrated fumes and airborne contaminates.

Id. at 25.

the ALJ did not discuss the medical conclusions of Dr. Lynde, though he did refer to some of the test results from Dr. Lynde's diagnostic evaluations. See id. at 25–27. Based on this determination of Newton's RFC, the ALJ found that she would be capable of performing the duties of a census clerk, which he described as sedentary work involving answering the phone and inputting information into a computer. See id. at 28. Since she was not inhibited from doing this job, the ALJ thus found her not to be "disabled" under the Social Security Act. See id.

The Appeals Council denied Newton's request for review of the ALJ's decision. See id. at 7. She then timely appealed to the district court for the Southern District of Georgia and the matter was referred to a magistrate judge. The magistrate judge's report noted that the ALJ had failed to fully develop the record regarding the reaching, handling, and fingering requirements of the census clerk position. See R1-31 at 6–7. He particularly emphasized that the ALJ had not addressed Newton's description of how she had performed her past work or Dr. Lynde's conclusions regarding the use of her right hand. See id. He thus recommended that the district court remand to the ALJ for further proceedings. See id. at 7. However, the district court rejected the magistrate judge's conclusions and affirmed the ALJ's findings. See R1-33 at 1. The district court found Dr. Lynde's report to be consistent with the ALJ's findings. See id. at 7. The court

6

also concluded that any possible error by the ALJ would have been harmless, since Newton would have been able to perform the requisite tasks for the census clerk job, as described in the Dictionary of Occupational Titles, if she used both of her arms.[3] See id. at 8. Newton appealed the district court's affirmance.

## II. DISCUSSION

Newton raises two issues on appeal. First, she asserts that the ALJ failed to evaluate properly the limitations on the use of her right upper extremity and the effect these problems would have on her ability to perform the duties of a census clerk.[4] In particular, she focused on the ALJ's failure to consider Dr. Lynde's findings, her testimony regarding pain in her right hand, and the requirements of the census clerk position. Second, she argues that the district court erred by deeming any errors committed by the ALJ to be harmless.

"Our review in a Social Security case is the same as that of the district

---

[3] According to the district court, "[t]he job of census clerk, as performed in the national economy, involves 'frequent' reaching, handling, and fingering." Id. at 8. The district court adopted the definition of "frequent" found in the Dictionary of Occupational Titles, namely "one-third to two-thirds of an eight hour workday." Id. Dr. Lynde's report found that Newton could use her right arm "up to 1/3 of [the] day" and her left arm had "unimpaired functioning." Id. Based on this data, the district court thus found that "[w]ith the use of both extremities, [Newton] could perform such tasks for one-third to two-thirds of the work day." Id.

[4] Newton expresses her argument in terms of errors committed by the district court rather than the ALJ. However, we review the ALJ's ruling rather than the district court's judgment. See Shinn ex rel. Shinn v. Comm'r of Soc. Sec., 391 F.3d 1276, 1282 (11th Cir. 2004). Since the substance of the argument still relates to problems with the ALJ's decision, we restate her claim as being against the ALJ's decision instead.

7

court." See Phillips v. Barnhart, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004). In reviewing appeals from a denial of Social Security disability benefits, we do not re-weigh evidence or decide facts anew. See id. Rather, we review the ALJ's decision and determine whether it is supported by substantial evidence. See id. "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Additionally, we review the ALJ's conclusions of law de novo. See Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam).

"If the claimant has a severe impairment that does not equal or meet the severity of a listed impairment," the ALJ assesses the claimant's RFC, which "measures whether the claimant can perform past relevant work despite his or her impairment." Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997); see 20 C.F.R. § 404.1520(e)-(f) (2008). To support a finding that a claimant is able to return to her past relevant work, "the ALJ must consider all the duties of that work and evaluate her ability to perform them in spite of her impairments." Lucas v. Sullivan, 918 F.2d 1567, 1574 n.3 (11th Cir. 1990). "Because a hearing before an ALJ is not an adversary proceeding, the ALJ has a basic obligation to develop a full and fair record." Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997) (per

curiam). The ALJ has this duty regardless of whether the claimant is represented by counsel at the hearing. See Brown v. Shalala, 44 F.3d 931, 934 (11th Cir. 1995) (per curiam). Requiring such a record "ensures that the ALJ has fulfilled his duty . . . to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts" and enables reviewing courts "to determine whether the ultimate decision on the merits is rational and supported by substantial evidence." Welch v. Bowen, 854 F.2d 436, 440 (11th Cir. 1988) (per curiam) (internal quotation marks and citations omitted). The claimant bears the burden of proving that she cannot return to her past relevant work. See Lucas, 918 F.2d at 1571.

The ALJ must generally give the opinion of a treating physician "substantial or considerable weight" absent a showing of good cause not to do so. MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986). Accordingly, we require an ALJ to specify the weight being given to a treating physician's opinion along with any reason for refusing to give it any weight. See id. Failure to do this can constitute reversible error. See id. If an ALJ either "ignored or failed properly to refute a treating physician's testimony, we hold as a matter of law that he has accepted it as true." Id.

When a claimant seeks to establish her disability through her testimony of pain or other symptoms, the ALJ must apply the "pain standard." Wilson v.

Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (per curiam). The pain standard states that subjective testimony must be supported by two showings: "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." Id. If the ALJ decides not to credit a claimant's subjective testimony about her pain, "he must articulate explicit and adequate reasons for doing so." Id. Failure to do so requires, as a matter of law, that the testimony be accepted as true. See id. The pain standard applies both to pain itself as well as to other subjective symptoms. See Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir 1991) (per curiam).

In this case, Newton submitted sufficient evidence of problems with her right extremities and of the duties of the census job that these difficulties would directly affect. Her work history report indicated that the census clerk position involved writing, typing, and handling small objects for up to seven hours a day—tasks she also described in her testimony at the ALJ hearing. See R2 at 127, 401. She also stated at that hearing that she had difficulty writing due to pain in her right hand and arm. See id. at 407–08. These complaints had support in her medical record, which mentioned potential nerve-related problems with her right arm and shoulder and discussed her limited ability to reach and grasp with her right

10

hand.  See id. at 227, 309.

Based on this showing, the ALJ had a duty to develop fully the record regarding the potential limitations of Newton's right hand, arm, and shoulder. However, his report failed to address these issues adequately.  This is particularly evident in his questioning of the vocational expert.  His description of a hypothetical person attempting to perform the duties of a census clerk included no mention of the writing and typing duties of the job nor of the potential worker's right-side infirmities.  Also missing in the ALJ's written decision was a discussion of the effect of these limitations on Newton's ability to fulfill the requirements of the census clerk position.  In fact, the ALJ did not discredit specifically Dr. Lynde's conclusions and Newton's statements regarding the effect of her right-hand difficulties.  This failure means that he accepted both documents as true as a matter of law and thus should have addressed them.  See MacGregor, 786 F.2d at 1053; Wilson, 284 F.3d at 1225.  Accordingly, we find that the ALJ did not develop the record fully or fairly with respect to the effect of Newton's limitations on her ability to perform the writing, typing, and handling of small objects required in her past job as a census taker.

Since our review is of the ALJ's decision rather than the district court's, we do not need to address the district court's finding of harmless error regarding

whether Newton could perform the census taker position as it is performed in the national economy.  See Shinn, 391 F.3d at 1282.  Additionally, we note that because the ALJ failed to develop a full and fair record, the district court's conclusion of harmless error was predicated on facts not in evidence.

## III. CONCLUSION

Newton asserts that the ALJ erred by not giving proper consideration to evidence regarding her limited ability to use her right hand and arm.  Because the ALJ failed to develop a full and fair record regarding Newton's ability to perform the writing, typing, and handling required of her past relevant work as a census taker, we are unable to determine whether the Commissioner's decision was rational and supported by substantial evidence.  Accordingly, we VACATE the Commissioner's decision and REMAND to the district court with instructions to remand to the ALJ for further proceedings consistent with this opinion.

**VACATED AND REMANDED.**